## R. C. ANTHONY v. STATE.

No. A-8630.   Jan. 18, 1934.
(28 Pac. [2d] 1115.)

Hughey Baker, for plaintiff in error.

J. Berry King, Atty. Gen., and Smith C. Matson, Asst. Atty. Gen., for the State.

DAVENPORT, J.   The plaintiff in error, hereinafter referred to as the defendant, was convicted of the crime of larceny by fraud, and sentenced to serve a term of three years in the state penitentiary and to pay the cost of prosecution, from which judgment and sentence the defendant appeals.

The testimony on behalf of the state, in substance, is as follows: That a short while before the 20th of November, 1931, W. E. Groves was operating a filling station and tourist camp in Tulsa, Okla.   He was approached at his filling station by two men who gave their names as Henson and Rockwell, who asked about a man by the name of R. C. Anthony.   Anthony was a brother-in-law of Groves; the parties telling Groves they wanted to locate Anthony, as Anthony was the owner of an oil lease in Texas they desired to purchase in order to square up a block of leases upon which to drill for oil.   They also advised Groves that the lease Anthony had was very valuable.   Groves advised the parties he did not know where Anthony was.   They drove away, requesting Groves to let them know if Anthony showed up.   The parties ap-

peared the second time to see if Groves had heard anything from Anthony.

The testimony further shows that the next day after the parties had been to see Groves the last time R. C. Anthony appeared at Groves' filling station, and Groves told Anthony about the two men inquiring for him. The next day, or shortly thereafter, Anthony went to Groves' house and explained the lease to him, and Groves went with Anthony to the hotel to talk with the parties. They had what they claimed was an oil lease upon land in Hill county, Tex., and after some discussion they filled in the name of Groves in the lease. This was on or about the 20th of November, 1931, and Groves gave Anthony a check for $2,250; Anthony telling Groves the deal would be closed in a few days, and he would get his money back. They told him they had to buy an interest from another party; that the lease was worth several thousand dollars. After the defendant cashed the check that had been given him by Groves, he and the other parties disappeared and were not seen or heard of for several months.

The defendant denies they got the Groves money by fraud, but testified it was an out and out sale, that Groves gave him $2,250 for his interest in the oil lease, and that he did not commit any offense.

It is clearly shown by the record that these two men who gave their names as Henson and Rockwell approached Groves at his filling station some time before Anthony showed up, were acquaintances of Anthony's, and were operating with him. Anthony called at Groves' home about the morning of November 20, 1931. It is shown that he and Groves went to the Mincks Hotel, where a conference was held, and then to the Tulsa Hotel, and there delivered to Groves what they claimed to be a good and

valid oil lease and got the check from Groves and cashed it, and the defendant disappeared and was not seen for several months. No unbiased man can read this record without reaching the conclusion that Henson, Rockwell, and Anthony had entered into a conspiracy to defraud Groves out of the money.

The only question in this case is, Was the defendant accorded a fair and impartial trial, and did the court correctly rule on the admission or rejection of the testimony, and correctly advise the jury as to the law applicable to the facts in the case?

The defendant, as grounds for reversal of this case, has assigned twenty-one errors alleged to have been committed by the trial court. In his brief, the first question discussed by the defendant is that the court erred in overruling the defendant's objection to the introduction of any testimony at the beginning of the trial of the case, and denying defendant a continuance when the date was changed in the information, making a discrepancy in the time of two years. After the trial had started, it was discovered the offense was alleged to have been committed the same day the information was filed.

The defendant urges that the order of the court permitting the state to amend its information after the trial had begun, by changing the year from 1933 to 1931, was a reversible error, and in support of his contention he cites a number of authorities. After a careful study of the authorities cited by the defendant, we find that the contention of the defendant that it was reversible error for the court to permit the information to be amended was not well taken, and that the authorities cited do not sustain the contention of the defendant. The amendment the court permitted the county attorney to make to the in-

formation did not change the information in substance or form, nor is it shown by the defendant that he was surprised.

In Potter v. State, 47 Okla. Cr. 254, 288 Pac. 362, this court in the first paragraph of the syllabus said:

"It is not error to permit a county attorney to amend the information in matter of form or substance, where the same can be done without material injury to the defendant, even though the trial may have begun."

The question then is, Did the changing of the year in the information materially injure or prejudice the rights of the defendant? The defendant shows by his testimony that he knew the crime for which he was called to answer, that he not only remembered the circumstances leading up to his securing the money of the prosecuting witness, but he testified he secured the money from Groves by the sale of an oil lease, and that he was not acting in conjunction with Henson and Rockwell in securing the prosecuting witness' money by fraud.

In Elkins v. State, 29 Okla. Cr. 175, 233 Pac. 491, in the first paragraph of the syllabus, this court said:

"An information for murder which charges the homicide to have occurred on the 30th day of December, 1923, and from the effects of which deceased died on the 30th day of December, 1922, is not fatally defective. The mistake of date is merely clerical, and its correction by amendment is a matter of form, which may be made even after the jury is impaneled."

It is not error to permit the county attorney to amend the information in matter of form or substance where the same can be done without material injury to the defendant, even though the trial has begun. Rich v. State, 46 Okla. Cr. 242, 284 Pac. 903.

It is next urged by the defendant that the court erred in permitting hearsay evidence, over the objection and exceptions of the defendant. An examination of the record shows that the defendant was being tried for the crime of larceny by fraud, and that all the testimony complained of by the defendant was testimony of the prosecuting witness wherein he stated that certain parties came to his place and inquired for the defendant prior to the day of the alleged offense. The defendant earnestly urges that it was error for the court to permit the prosecuting witness to say anything about Henson and Rockwell coming to him and inquiring for the defendant. Under the theory of the state, the defendant is charged with larceny of this money by fraud and that Henson and Rockwell were co-conspirators with him. The contention of the defendant that the court admitted hearsay testimony is untenable and without merit.

It is next urged by the defendant that there is a variance between the proof and information, and that the court erred in not sustaining the defendant's motion to instruct the jury to return a verdict of not guilty by reason of the variance between the information and proof. This contention of the defendant is based upon the fact that the information charged that the crime was committed by the defendant in concert with Richard Doe and John Doe, and that it does not charge the real names of Richard Doe and John Doe were unknown to the pleader, and that the evidence shows that the names of Henson and Rockwell, alleged to be connected with the defendant, were known to the pleader at the time the information was filed, and therefore there is a variance in the proof and the information.

It is immaterial to this defendant who was named as his codefendants. The crime was identified by other material allegations in the information, and the facts clearly show that the names of the other parties alleged to be coconspirators with the defendant were known to him. We do not think the defendant or his counsel were misled by the names used in the information. However, this is not a new question in this court. This question was before this court and decided adversely to the contention here urged in Winfield v. State, 18 Okla. Cr. 257, 191 Pac 609.

It is also contended by the defendant that the trial court erred in permitting the county attorney to indorse the name of Mrs. W. E. Groves on the information after the case was called for trial. Under section 2511, C. O. S. 1921, now section 2829, Okla. Stat. 1931, permission to indorse names of additional witnesses on the information at the trial is a matter resting entirely within the sound discretion of the trial court, and, unless it clearly appears it was an abuse of discretion, and that it was prejudicial to the substantial rights of the defendant, it will not be held reversible error.

There is nothing in the record to show that the court abused its discretion in permitting the county attorney to indorse the name of Mrs. W. E. Groves on the information, or that it was prejudicial to the substantial rights of the defendant. The testimony given by Mrs. Groves was cumulative. Harrell v. State, 36 Okla. Cr. 225, 253 Pac. 516.

In Ireton v. State, 29 Okla. Cr. 266, 233 Pac. 771, in the fifth paragraph of the syllabus, this court said:

"This court will not reverse a case for an error in any matter of pleading or procedure, unless, after an ex-

amination of the entire record, it appears that the error complained of has probably resulted in a miscarriage of justice or constitutes a substantial violation of a constitutional or statutory right."

All of the questions raised by the defendant have been considered by the court, and we hold that neither of the assignments possesses sufficient merit to warrant a reversal. It is clear from the record in this case that the defendant, who was a brother-in-law of the prosecuting witness, conspired with Henson and Rockwell to fleece the prosecuting witness out of his money by fraud. Their scheme shows to have been carefully planned; the parties appearing at the business place of prosecuting witness and inquiring for defendant, returning again to inquire if the prosecuting witness had heard anything from the defendant, and the next day the defendant showed up at the place of business of the prosecuting witness; every step, every act, conclusively showing a scheme had been laid for the purpose of taking the money of the prosecuting witness. The defendant knew all about the other parties being in the city of Tulsa at the time of the alleged crime; they were in the hotel lobby where they could consult and advise the defendant.

The evidence in this case shows the defendant guilty. He was accorded a fair and impartial trial, and no unbiased jury could have reached any other conclusion than that of his guilt. The evidence is sufficient to sustain the judgment. There are no errors in the record sufficient to warrant a reversal.

The judgment is affirmed.

EDWARDS, P. J., and CHAPPELL, J., concur.