## SWANIE FITZGERALD v. STATE.

No. A-10055.  Sept. 30, 1942.
(129 P. 2d 867.)

Hughes & Hughes, of Hobart, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and J. Walker Field, Asst. Atty. Gen., for the State.

DOYLE, J. The appeal in this case is taken to reverse a judgment of the county court of Kiowa county, rendered in accordance with the verdict of the jury, finding "the defendant, Swanie Fitzgerald, guilty and assess his punishment at a fine of $125 and a jail sentence of 45 days."

Motion for new trial was duly filed. On December 20, 1940, said motion, having been presented to the court, was overruled, exception allowed; thereupon judgment was rendered on the verdict, and that the defendant pay all costs.

The specific charge was that in said county on the 26th day of March, 1940, Swanie Fitzgerald did have in his possession two and one-half pints of whisky, with' the unlawful intent to sell the same.

Several assignments of error are presented in the brief of plaintiff in error, among others, that the court

erred in permitting the state, over defendant's objections and exceptions, to indorse the names of Edgar Hunter and Tom Overstreet upon the information, after the jury was impaneled and sworn to try the cause; that the court erred in admitting incompetent and prejudicial evidence over defendant's objections; that the verdict of the jury is contrary to the law and to the evidence, and that the court erred in overruling defendant's motion for a new trial.

It appears from the record that Doss Kutch, chief of police, in company with Elton Cary, his assistant, on March 26, 1940, went to the home of defendant, on South Stephens street in the city of Hobart, in executing a search warrant, and served the same on Mrs. Fitzgerald; that they found two and one-half pints of whisky and returned the same to Max Carder, assistant county attorney.

Over defendant's objection, Doss Kutch testified that he saw there was quite a number of cars went in and out of defendant's premises, and over the defendant's objection he further testified as follows:

"Q. Mr. Kutch, from your observation do you know the reputation of the defendant's place, whether it is a place for selling intoxicating liquor? A. I do. Q. What is that reputation, Mr. Kutch, good or bad? A. Bad. Q. Mr. Kutch, you stated that you are chief of police. In that capacity have you had a number of complaints against the defendant's premises as being a place for sale and possession of intoxicating liquors prior to the search and seizure on March 26, 1940? Objection overruled. Exception. A. I have."

Elton Cary testified as follows:

"Q. Did both you and Mr. Kutch find this two and one-half pints of intoxicating liquor? A. Yes, sir."

Edgar Hunter, called and sworn as a witness, was permitted to testify, over the defendant's objections, that

his name had been indorsed on the information after both state and defendant announced ready for trial and after the jury having been impaneled and sworn to try the case; that defendant's counsel has had no opportunity whatever to interview witness as to what his evidence would be.

"The Court: Overruled. At this time I will give you ten minutes to talk to these two additional witnesses if you want to talk to them. (No examination made of witnesses by counsel for defendant.) Q. Son, how old are you? A. Twelve. Q. And you understand the oath the judge gave you, about swearing to the truth, that is correct? A. Yes, sir. Q. Around the first part of the year, say March 26th, or maybe several months before or after, the defendant, Mr. Fitzgerald, lived on Stephens Street, to your knowledge, didn't he? A. Yes, sir. Q. Son, do you know if the defendant, Mr. Fitzgerald, has a son about your age? A. I don't know if it is his son or not, he has got a boy. Q. He lives in the house with him? A. Yes, sir. Q. When you played with him, didn't you have occasion often times to go into Mr. Fitzgerald's house and play in through the house and around the premises? A. Yes. Q. Son, when you played in the house, didn't you have some knowledge of where some intoxicating liquor was hid? Objection overruled. Exception allowed. Q. Just tell the court, son, if you knew where any intoxicating liquor was held in Mr. Fitzgerald's house. Or about the premises? A. Around the cellar porch. Q. Where else, son, in the kitchen, refrigerator, or anything like that? Counsel for defendant: Objected to leading the witness. Incompetent, irrelevant and immaterial. By the Court: Don't lead. Q. Son, where else on the premises did you know that whisky was being kept in Mr. Fitzgerald's house? Objection overruled. Exception taken. Q. Just answer the question? A. Joe Ben showed me one—kept some down in the ice-box in the back room. Q. When you played around the house, did you see a large number of people coming in and out of the house? Objection overruled. Q. Now at any time when

you played around there in the premises, son, did you see people carry away intoxicating liquor, that you could see? Objected to as incompetent, not within the issues of this case and prejudicial. A. I seen them carry it in their pocket. By the Court: It goes to the reputation of the place. Overruled. Exception. Q. Now, son, just tell the court and jury if you saw men carry away intoxicating liquor from that place, when you could see the intoxicating liquor. Objected to as incompetent, irrelevant and immaterial, and not within the issues of this case, leading and suggestive. By the Court: Overruled. Counsel for defendant: Not the proper way to establish the general reputation. By the Court: I think that would be the best way to establish a reputation. Overruled. Exception. A. Yes. Q. A number of times? Counsel for defendant: We move that the evidence be stricken and that the answer be stricken, and the jury instructed not to consider it. Overruled. Exception. Counsel for defendant: At this time comes the defendant and asks the court to declare a mistrial of the case for the prejudicial effect of the evidence that has been heard in the presence of the jury. By the Court: Overruled. Exception. Q. Son, tell us, how you saw the intoxicating liquor? A. In their pocket, saw the top of it sticking out."

Tom Overstreet, constable, testified:

"Q. Have you seen a large number of cars in and at Swanie Fitzgerald's place, on South Stephens? A. I have seen several cars in and at his premises. Q. Mr. Overstreet, do you know the general reputation of the place on South Stephens, the defendant's place? A. Yes, sir. Q. Will you just tell the court if that reputation is good or bad, for sale and possession of intoxicating liquors? Objected to as being incompetent, irrelevant and immaterial, and no proper predicate having been laid. Overruled. Exception allowed. A. Bad."

On behalf of the defendant, Dan Christian testified: That he is general supervisor foreman of the farm to market project of W.P.A. in west commissioner's district, and has held the position for about two years; is ac-

quainted with defendant, Fitzgerald, also with Clint Huggins; that on March 26th Swanie Fitzgerald worked on said project of which he had supervision; that the time sheet shows that defendant worked eight hours on that day, from 8 to 12, and 12:30 to 4:30; that the time sheet also shows that Clint Huggins worked the same hours on that day.

The time sheet introduced in evidence as exhibit "A".

He further testified that Mr. Fitzgerald had been employed on said project for some period of time, and worked for about one month after March 26th, at which time all the employees that resided in the city of Hobart were discharged for the reason that local employment became available in the vicinity of the project.

Clint Huggins testified:

"I live at Hobart, worked on the W.P.A. as testified by Mr. Christian, worked on the 26th day of March, I worked through March, Mr. Fitzgerald worked with me. On March 26th, Mr. Fitzgerald and I bought three pints of whisky, we drank a half pint that night, the next day we went back on the job. I heard they had raided his home and found the two and a half pints of liquor we had bought."

That he did not drink it and left the whisky at Swanie's, and did not take his portion home because his wife don't approve of that; that no part of the liquor purchased was for the purpose of selling it or unlawfully disposing of it. It was for their own use, so that they could have a drink when they came in at night after working all day.

On cross-examination asked:

"Q. From whom did you purchase that? Objected to as incompetent, and not within the issues of this case. Sustained. The County Attorney: Exception."

The defendant rests and the state rests.

The defendant moved the court to direct the jury to return a verdict of not guilty, for the reason that the evidence fails to establish the commission of the offense charged.

The Court: Overruled. Exception reserved.

The first contention is that the court erred in permitting the county attorney to indorse the names of two additional witnesses, Tom, Overstreet and Edgar Hunter, on the information after the jury was duly impaneled and sworn, in that the county attorney made no proper showing as required by sec. 2829, Sts. 1931, 22 O. S. 1941 § 303, to the effect that the evidence was not known to him prior to the trial. Citing Clark v. State, 5 Okla. Cr. 189, 113 P. 992, and Steen et al. v. State, 4 Okla. Cr. 309, 111 P. 1097, 1099, where this court, speaking through Judge Richardson, said:

"Under this statute, it is the duty of the county attorney, before he files the information, to indorse thereon the names of all persons whom he knows or has reason to believe will be called by the state as witnesses to testify in the case in chief; and, if subsequently the names of other witnesses to be used to prove the case in chief become known to him, leave of court should be obtained to place their names on the information, and this should be done and the endorsement made as early as possible before the trial begins. Where, however, after the trial is begun, the county attorney learns of other witnesses in chief whom he did not know of before upon a proper showing of that fact made to the court, leave to indorse their names even while the trial is in progress, and to permit them to testify, may be granted by the court in the exercise of its discretion."

In Boston v. State, 39 Okla. Cr. 275, 264 P. 212, 213, it is said:

"It is error to permit a witness to testify in chief in a misdemeanor case, unless his name has been indorsed

on the information. [Sec. 2829, Sts. 1931, 22 O., S. 1941 § 303.] The law does not contemplate that the names of witnesses known to the state shall be withheld, but that they shall be indorsed on the information. Where they are omitted by oversight or inadvertence, or it is not learned until after the information is filed that certain persons may be witnesses, and there is no bad faith, their names may be indorsed as the rule of the court may prescribe, or by leave of court even during the course of the trial."

Under the statute permission to indorse the names of additional witnesses on the information is a matter resting entirely within the judicial discretion of the court, and unless it clearly appears that it was an abuse of discretion, and that it was prejudicial to the substantial rights of the defendant, it will not be held to be reversible error.

It appears that the testimony of the said witness was incompetent for reasons hereinafter stated.

It is also urged that the witness Edgar Hunter was incompetent, and that the court erred in admitting the testimony, and in overruling the motion to strike the testimony of said witness.

Obviously, it was an error to overrule the objections made and to overrule the motion to strike the testimony of this witness, as shown by the testimony of said witness hereinbefore set out in full, and it may be said the same is the strongest argument in support of defendant's contention. It appears that the witness failed to state whether or not the testimony of observations made by this witness "several months before or afterwards" of the alleged date of the offense, was made for the purpose of qualifying to testify as to the reputation of defendant's residence.

It also appears that the court commented on the weight of the evidence as follows: "It goes to the reputation of the place." Overruled. Exception. And again stated: "I think that would be the best way to establish a reputation." Overruled. Exception. This was error.

It will also be observed that the testimony of this witness was in part hearsay:

Where hearsay testimony has been received which contributes to a verdict of guilty, the reception of such evidence does not constitute harmless error, but will be ground for reversal. McRae v. State, 8 Okla. Cr. 483, 129 P. 71; Brokhaus v. State, 11 Okla. Cr. 625, 150 P. 510; Hull v. State, 61 Okla. Cr. 12, 65 P. 2d 423.

It is also contended that the testimony as to the reputation of the defendant's residence, occupied as such, was based on observations alone. The witness Kutch testified that from observations he knew the reputation of the defendant's place, and that reputation was bad. The witness Overstreet, constable, testified that he saw several cars at the defendant's premises and knows the general reputation of the place, and that reputation is bad.

The objections to the competency of these witnesses was that no proper predicate had been made.

We think the objections were well taken.

In Small v. State, 21 Okla. Cr. 99, 210 P. 317, 318, it is said:

" 'Reputation' is said to be the common knowledge of a community."

In Tarbutton v. State, 57 Okla. Cr. 442, 48 P.2d 877, 878, it is said:

"It is true that the word 'reputation,' when unqualified, in common parlance means general reputation. What peace officers say to one another about a man's

place is not reputation. Reputation is what people generally in a community say of a place."

It follows that the witnesses for the state did not properly qualify as knowing the general reputation of defendant's place of residence.

In the case of Williams v. State, 25 Okla. Cr. 284, 220 P. 667, this court held:

"Proof that defendant's home had the general reputation of being a place of public resort is not a sufficient predicate to authorize the admission of evidence of the general reputation of such place as a place where intoxicating liquor is kept for sale."

Matson, Presiding Judge, in the opinion, reviewing decisions of this court, concludes as follows:

"Thus it will be seen that evidence of the general reputation of the premises as a place where liquors are sold is ordinarily not admissible in a prosecution for the unlawful possession of intoxicating liquor with intent to sell. In this jurisdiction the only exception to such general rule is as stated above, and evidently in this case the prosecuting officers believed they were complying with the premise that the place must be a place of public resort by merely proving the general reputation of the place as one of public resort. Such was not the holding in the Ward Case. Before evidence of general reputation of the premises will be held to be admissible in prosecutions of this kind there must be specific evidence that the place itself was a place of public resort, not simply that it bore such reputation."

It is our opinion that the testimony as to the reputation of defendant's home was wholly incompetent, and the only effect of it must have been to prejudice the jury against defendant, and for this reason it was error to overrule defendant's motion to strike the same.

The statements of the court, duly excepted to, taken in connection with the leading and suggestive questions

propounded by the county attorney to the child witness, were clearly a comment upon the weight of the evidence. These expressions of the court were not a correct statement of the law and might reasonably have prejudiced the jury against defendant, his counsel and defense.

We do not deem it necessary to comment on the other assignments of error.

When we recall the presumption that the law always indulges as to the innocence of one accused of crime, and the necessity of establishing the guilt of the defendant beyond a reasonable doubt, we think it would be destroying the presumption in favor of innocence, and permitting the subversion of the rule requiring the establishment of guilt beyond a reasonable doubt, to allow this conviction to stand, and we cannot help thinking that a conviction upon testimony so slight and insufficient was more the result of passion and partiality than the dispassionate conclusion of the jury upon the facts in evidence.

For the erroneous admission of incompetent evidence and the insufficiency of the evidence to sustain the verdict, the judgment of the county court of Kiowa county is reversed, and unless further incriminating facts can be proved, the defendant should be discharged.

BAREFOOT, P. J., and JONES, J., concur.