## BISANAR v. STATE.

No. A-11160.   July 19, 1950.

Rehearing Denied Nov. 15, 1950.

(223 P. 2d 795.)

Bell & Tucker, McAlester, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Lewis A. Wallace, Asst. Atty. Gen., for defendant in error.

POWELL, J.   Mitchell Thomas Bisanar, the plaintiff in error, was charged by information filed in the county court of Pittsburg county, with the crime of driving an automobile while under the influence of intoxicating liquor, upon and along U. S. Highway 270, in the city

limits of McAlester. The jury found the defendant guilty as charged, with punishment assessed at a fine of $25. The case has been by the defendant duly appealed to this court.

The petition in error contains some eleven specifications of error, which are argued in brief in four groups, and will be taken up as presented.

The undisputed evidence at trial developed that the defendant was a long-time resident of McAlester, that he was 26 years of age, had a wife and infant child; and that he was a high school graduate, had two years college work, and had served his country as a pilot in the air corps for four and a half years in World War II, and was then in the reserve and was in the habit of driving from McAlester to Oklahoma City where he continued his reserve training at intervals; that he was an active civic worker at McAlester, and that he was in the jewelry business there.

We now consider the evidence involving the merits of the charge. Andrew G. Bidwell, state highway patrolman, testified that he and his fellow-patrolman, B. J. Gibson, were on duty and cruising south on Main street in McAlester on the morning of June 30, 1948, at about 1:40 to 1:45; that between Washington and Grand Avenues and about even with the market, they heard a loud crash as if two automobiles had hit. A pedestrian said: "I believe it is across the bridge." As the patrolmen drove on the bridge they observed the defendant driving off the bridge, Officer Bidwell being well acquainted with him. The officers drove on across the bridge and found two broken boards on the approach on the west end of the bridge on the north side, and the witness stated:

" * * * a continual skid mark from those broken boards back up the street west, almost to the intersection [being, according to his further testimony, 238 feet of skid marks on the pavement]. We started back across the bridge and the same fellow [the pedestrian] said that the car went south behind the express depot. We drove there and found a Chevrolet automobile sitting there with the right door open."

Witness further testified that there was no one in the car, that he looked in it and there were two bottles of whisky in the car, one in the seat and the other on the floor; that witness examined the car and observed a bent place in the left front fender and a fog light broken; that defendant Bisanar came up, that he was a little unsteady on his feet and that his speech was mumbled, that he had the odor of whisky on his breath and that his very manner was not that of a sober man. Witness further stated that he arrested Mr. Bisanar and he and Patrolman Gibson took him to the county jail, and booked him for driving while intoxicated; that defendant admitted that one bottle of whisky was his, but that he could not account for the other.

B. J. Gibson testified substantially as witness Bidwell; further, that when defendant came up as his car was being searched that defendant admitted the car was his; that he noticed the odor of alcohol on his breath; that officer Bidwell took charge of the car and witness took Mr. Bisanar in his car and advised him that he would take him to jail and advised him of the charge; that defendant did not deny that he was under the influence of intoxicating liquor.

Harry Eckman, policeman, McAlester, testified that on the morning of June 30, 1948, he and Walter Watson, another policeman, were on First street and heard a crash. He said:

"We drove to the Super Station on the corner of Main Street and Choctaw and a fellow there told us it [the crash] was across the viaduct. While we were waiting there, I did'nt see a car go by. We drove north on Main towards the viaduct and went across the viaduct on the north section. Some one had hit the banister close to the tracks and broke it. Skid marks were all way back to A street. There were two marks there and a jump and two more marks and a skid. We came back to viaduct and down Main and saw he was behind the express office. When we drove up, Mr. Bidwell had him under arrest." Witness further testified: "To the best of my knowledge, he was intoxicated. Staggering."

Walter Watson, policeman, testified substantially as witness Eckman, and stated that he observed the defendant by his car at the express office, and that he staggered and had the appearance of being under the influence of intoxicating liquor.

This concluded the state's evidence in chief. Counsel for defendant did not demur to the evidence, or move for a directed verdict.

Counsel for defendant summarized the defendant's evidence in his brief, and fairly, and substantially as follows:

Witness Harry Payne, a cab driver and who owns his own cab, testified that he was called by the jailor to give transportation to Bisanar home. This was about 12:30 a.m. He testified that defendant walked, talked and looked all right, and this was based upon an acquaintance of ten years. Witness knew the time to be earlier than 1 o'clock in the morning, as that is his time to go to bed, and he had not yet gone to bed.

Witness Horace Collier, in the automobile business in McAlester, repaired Bisanar's car after the collision.

The repair bill was $21.35, which, however, included a new muffler, not affected by the accident. The left rear wheel was repaired because the wheel locked when the brakes were applied and which would cause the car to go out of control.

Witness James W. Mitrovgenis, a close friend of defendant, testified that he had been with defendant that evening to a Junior Chamber of Commerce meeting, in which both were active. At the meeting they planned on going fishing with Ernie Owens the next morning and Bisanar was to look him up that night. About 9 o'clock defendant drove witness home, along with Al Haynes, and at witness's home, each of the parties had a small mixed drink. As defendant and Haynes were going to a restaurant to eat, they took with them a small amount of whisky and defendant was sober.

Mrs. Sophia Mitrovgenis testified that she was in charge of the restaurant where Bisanar went to get cigarettes just after his accident. She had known defendant most of his life and conversed with him about his baby, and stated that he was not drunk; that being in the restaurant business, she knew a drunk person when she saw one.

The defendant next testified in his own behalf, stating substantially that after finishing high school he was in college two years and then in the Air Force for four and a half years in the Asiatic Theater as a pilot and that he was then in the flying reserve, taking training by driving up to Oklahoma City at his own expense. He attended the Jaycee meeting this night, but Ernie Owens was not there as he was not a member. Owens had planned on going "honky-tonking" and had mentioned some places where he might be. So, after taking Mit-

rovgenis home and having one mixed drink, defendant and Haynes left, taking a small amount of liquor with them, to the "Pig & Whistle", where they ate and had a small drink. They then searched for a place at Krebs, but ended up at a place near Alderson, where they met some Marines and their dates. Some one in the party bought a pint of whisky, from which the five Marines, defendant, Haynes and maybe some of the girls, had a drink. The half pint bottle could not be accounted for. Haynes had put the pint bottle, half full, in the car, without Bisanar's knowledge.

Defendant explained that coming toward the bridge, a cat ran across the street, the brakes of his car grabbed and the car rather lightly collided with a board on the bridge. He testified that this was a rough road, with deep ditches and the car could not go fast. The car was then driven to the rear of the nearby express office and parked in the usual place where he was in the habit of parking it, which was near the defendant's place of business, and Bisanar went to "Jimmie's Cafe" to buy some cigarettes. Among other people, he saw Patrolman Al Price in there, who was not used as a witness by the county attorney, though his name was endorsed as a witness at the beginning of the trial.

Defendant further testified that after leaving the cafe, prior to midnight, a crowd was noticed at his car and defendant went to his car. His passenger, in getting out on the right hand side, had left the door open. Defendant was nervous, but explained the full details to the patrolman. He was sober as he had only had three light drinks from 9 o'clock until midnight, and having eaten in the interval. Bisanar stated that the patrolman told him at the jail that there had been a collision on the highway and left the impression that he might be

involved, and this frightened him. Thereafter he did not call his wife until the jailer told him that the officers were lying to him. The jailer called the sheriff but the conversation was excluded from the evidence, but the jailer called a taxi and sent defendant home. His car had been distrained by the patrolman. The county attorney told defendant that since he had an accident, there was no alternative except to file charges.

Freddie Manuel, called as a rebuttal witness for the state, testified that he was the radio clerk for the Highway Patrol in McAlester; that early in the morning of June 30, he was in Jimmie Metrovgenis' Cafe, and was siting in a booth eating when the defendant came into the cafe with another man, and as he walked in he saw the defendant turn and look back up the street. The witness said, "I looked down at my place and when I looked up, he was gone." He said the defendant appeared to be drinking, but would not state whether or not he was drunk, said that "he looked like he had been having a good time."

At the close of all the evidence on behalf of the state and of the defendant, counsel for defendant did not ask the court to request the jury to return a verdict of not guilty.

The pertinent part of the information reads:

"Now comes Fred W. Whetsel, the duly qualified and acting County Attorney, in and for Pittsburg County, State of Oklahoma; and gives the County Court of Pittsburg County, State of Oklahoma, to know and be informed that Mitchell Thomas Basanar did, in Pittsburg County, State of Oklahoma, on or about the 30th day of June, in the year of our Lord One Thousand Nine Hundred and Forty-eight and anterior to the presentment hereof, then and there unlawfully, willfully, wrongfully, and while un-

der the influence of intoxicating liquor, drive, operate and propel a certain motor vehicle, to-wit: 1942 Chevrolet, bearing 1948 Oklahoma License No. 10499, upon and along U. S. Highway No. 270, in the city limits of McAlester, in Pittsburg County, Oklahoma; contrary to the form of the statutes, in such cases made and provided and against the peace and dignity of the State.

"/Signed/ Fred W. Whetsel,

"County Attorney."

The pertinent part of the statute on which the information is based, being Tit. 47 O.S.A. § 93, reads:

"It shall be unlawful for any person who is under the influence of intoxicating liquor, * * * to operate or drive a motor vehicle on any highway within this State, * * * and any person violating the provisions of this Section shall be deemed guilty of a misdemeanor for the first offense and upon conviction therefor shall be punished by imprisonment in the county jail for a period of time not to exceed one (1) year, or by a fine of not more than Five Hundred ($500.00) Dollars or by both such fine and imprisonment."

There was, as we have seen from the above summary of the evidence, a sharp conflict in the evidence as to the intoxication of the defendant, and there was sufficient evidence of the intoxication of the defendant for the submission of the issue to the jury. The trial court gave an instruction defining the term "under the influence of intoxicating liquor," as follows:

"You are instructed that when a person, from the use of intoxicating liquor, has so far affected his nervous system, brain, and muscles in driving an automobile, so as to impair, to an appreciable degree, his ability to operate his car in the manner that an ordinarily prudent and cautious man, in the full possession of his faculties, using reasonable care, would operate or drive a similar vehicle under like conditions, then such driver is 'under

the influence of intoxicating liquor within the meaning of the statutes.'"

In the recent case of Walker v. State, 89 Okla. Cr. 284, 207 P. 2d 341, and being a case in which the defendant was convicted of drunken driving, this court said:

"1. Where the evidence is conflicting and different inferences may be drawn therefrom, it is the province of the jury to weigh the same and determine the facts.

"2. The function of the Criminal Court of Appeals is limited to ascertaining whether there is a basis, in the evidence, on which the jury can reasonably conclude that the accused is guilty as charged."

Also, this court, in the late case of Parker v. State, 91 Okla. Cr. 71, 216 P. 2d 340, held:

"The Criminal Court of Appeals will not substitute its judgment for that of the jury, where there is evidence reasonably tending to support the conclusions arrived at by the jury."

But the counsel urges that the record discloses errors that entitle defendant to a new trial. It is contended that the trial court erred in permitting the county attorney to endorse the names of three additional witnesses on the information after the parties had announced ready for trial. It appears that the county attorney was granted permission to endorse on the information the names of three witnesses: Harry Eckman, Al Price, and Walter Watson, all police officers in the city of McAlester. The defendant had objected to the endorsement of these additional names, on the ground of surprise, and asked that the case be continued until the next jury docket. The objection was overruled and an exception was allowed.

Eckman and Watson, on trial of the case, were used as witnesses, and their evidence had been summarized.

Price was not used as a witness. The evidence of the policemen was cumulative, as the summary of their testimony discloses, and the evidence of each may be considered in comparison with the evidence of the patrolmen and the witness Freddie Manuel. The defendant was already under arrest when the policemen drove up near defendant's car by the express office. The defendant testified to seeing the city police car parked near the highway patrol car, and no doubt was aware that the policemen by such fact had certain knowledge involving defendant. At the time the court permitted the endorsement of the names of the additional witnesses, which was at the commencement of the trial, the county attorney contended that the defendant knew that the policemen had some knowledge of the facts and might be used as witnesses. The fact of such knowledge by counsel of itself, however, would not justify such endorsement. Apparently the court concluded that the names were left off the information by inadvertence on the part of the county attorney, and that the county attorney was in good faith. By provision of Tit. 22 O.S.A. § 303, permission of the trial court to endorse additional names of witnesses on the information is not reversible error unless it clearly appears that granting such permission was an abuse of discretion, and prejudicial to the substantial rights of defendant. See Fitzgerald v. State, 75 Okla. Cr. 192, 129 P. 2d 867, and cases cited. Also, Anthony v. State, 55 Okla. Cr. 260, 28 P. 2d 1115. We are unable from the facts recited to say that the action by the court was prejudicial to the substantial rights of the defendant.

It is next contended that the verdict of the jury was not in proper form, and should not have been received by the court because of certain alleged irregularities. The verdict is as follows:

"We, the jury, drawn, impaneled and sworn in the above entitled cause, do upon oaths find the defendant, Mitchell Thomas Bisanar, guilty of driving an automobile while intoxicated as charged in the information and assess his punishment at a fine of $25.00.

"We the jurors agree to a fine.

"B. V. Bee, Foreman."

The record fails to show that counsel objected to the form of verdict at the time it was returned. The verdict is definite and certain on the question of guilt and the punishment assessed. We conclude that the added phrase, "We the jurors agree to a fine", added after the assessment of the punishment of a fine of $25 is mere surplusage, and does not conflict with the verdict rendered. The jury had authority under the applicable statute, Tit. 47 O.S.A. § 93, supra, to assess a jail sentence or a fine, or both. The jury assessed only a fine. Apparently, they took into consideration the excellent record of the defendant, and sympathized with him, but were bound under the evidence to find him guilty but wanted to assess the very lowest punishment. In the case of Smith v. State, 81 Okla. Cr. 412, 165 P. 2d 381, 167 P. 2d 83, this court said:

"Where an informal verdict is returned, it should be objected to at the time, and the attention of the court called to its defective form so that it may be corrected. When this is not done, all reasonable intendments and inferences will be indulged to sustain it as to form."

See, also, Smith v. State, 83 Okla. Cr. 392, 177 P. 2d 523.

In the case of Estes v. State, 35 Okla. Cr. 335, 250 P. 809, being a case where the jury actually did make a recommendation that a jail sentence be suspended, this court said:

"The inclusion in a verdict of recommendation that the court suspend the jail sentence imposed during good behavior is improper, though not prejudicial to defendant."

See, also, Cole v. State, 70 Okla. Cr. 109, 104 P. 2d 981, and Parker v. State, supra.

Counsel for defendant next argues that the jury was misled by an instruction given by the court by reason of the action of the jury in returning into court after it had begun deliberation, seeking information from the court as to whether or not the defendant would lose his driver's license if he was assessed a fine. The court advised the jury in the affirmative and they retired for further deliberation. The court caused the jury to be returned into court, and he gave the jury the following additional instruction:

"Gentlemen: As to the question of whether or not the defendant would lose his license if found guilty, is not for your consideration. You are to consider the law as given in the instructions and find the verdict."

The defendant excepted to both the action of the court and the instruction. Of course, the question of whether the defendant would lose his license if found guilty is no part of the penalty prescribed by Tit. 47 O.S.A. § 93, supra, and was not an issue for the jury to determine, their function being to decide the case based upon the evidence presented, and under the court's instructions as to the law, and by reason of the apparent confusion indicated by the question propounded to the court, his action in narrowing the issue was proper.

In the case of Cox v. State, 41 Okla. Cr. 363, 273 P. 375, the jury failed to follow the instruction of the court and imposed simply a fine, when under the law it was necessary, if defendant was found guilty, to assess both

a fine and imprisonment. It was there held that by provision of sec. 2743, C.O.S. 1921, Tit. 22 O.S.A. § 919, the court should have directed the jury to reconsider the verdict, giving proper instructions as to the law. The Cox case, as well as the case of James v. State, 77 Okla. Cr. 108, 139 P. 2d 202, cited, are clearly distinguishable from the within case as to the facts, and are not applicable herein.

It is finally argued that this case should be reversed because of certain improper remarks made by the assistant county attorney in his argument to the jury.

The record shows that during the argument of counsel for the State, Mr. Bell, counsel for the defendant, objected as follows:

"As I have heretofore objected, I do now object to statement of counsel for the State, that in another trial, presumably in another term of court, that counsel for the defense had called three certain highway patrolmen, 'high-booted, pot-bellied, brown-shirted gestapo.' It is improper argument and not in the scope of this case, and I ask that the jury be instructed to disregard statement of counsel for the State.

"Court: [to the jury] The statement of counsel for State is improper, and you are instructed to disregard such statement of counsel for the State."

The arguments of counsel were not taken by the court reporter. If the improper remarks attributed to the prosecutor were made by him in his closing argument to the jury, and such remarks had been invited or provoked by defense counsel in his argument, then same would not be ground for a new trial. See Woodruff v. State, 56 Okla. Cr. 409, 41 P. 2d 129, Parker v. State, supra, and Chessar v. State, 63 Okla. Cr. 84, 73 P. 2d 191, 192, this court holding, in the latter case:

"Ordinarily, error cannot be predicated upon mere unexplained excerpts from the remarks of counsel to the jury. Enough must appear of record to advise the appellate court of what preceded the allged objectionable remarks and their meaning to be deduced from the context, and whether or not they were invited or provoked by remarks made by opposing counsel."

We do not conclude that the remarks quoted prejudicially affected the rights of the accused, such as to justify a reversal, because such remarks had no relation to the facts of the case on trial, but related to purported remarks alleged to have been made by opposing counsel in the trial of another case. The trial court promptly and properly sustained objections to the statement of the prosecutor, and admonished the jury to disregard the same. In the case of Wisdom v. State, 56 Okla. Cr. 140, 36 P. 2d 514, we held:

"To warrant a reversal on account of the argument of the prosecuting attorney, such argument must be grossly improper and unwarranted upon some material point injuriously affecting the defendant's rights."

From a careful reading of the entire record, and ever mindful of the commendatory matters impelling particular and painstaking care, we are unable to say that the conduct of the county attorney in his questioning of the witnesses or his argument to the jury, so far as disclosed by the record, was so improper as to justify this court in reversing this case. The defendant clearly analyzed his situation at the time of his arrest when he is quoted as saying to Patrolman Gibson, with reference to the whisky, the collision with the bridge banister and the entire transaction, that: "a fellow shouldn't get in that kind of a predicament." The jury weighed the questions in issue and was most generous.

A motor vehicle being operated by a driver whose nervous system, brain or muscles are affected or impaired by use of intoxicating liquors, or for other reasons as for that, so as to make his driving less careful, is a most dangerous instrument, as is attested by the mounting fatalities daily recorded in this state and in the Nation. In fact, the proportion of deaths from such cause is most alarming and constitutes a threat to the state and national welfare. Only by education and the deterrent of strict inforcement of the laws regulating the operation of motor vehicles can a solution to the problem be expected.

For the reasons stated, the case is affirmed.

JONES, P. J., and BRETT, J., concur.