## ROBERTSON v. STATE.

No. A-11689. Oct. 29, 1952.

(250 P. 2d 62.)

Reily, Reily & Spurr, Shawnee, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and James P. Garrett, Asst. Atty. Gen., for defendant in error.

BRETT, P. J. The plaintiff in error, Luther S. Robertson, defendant below, was charged by information with the offense of driving an automobile while under the influence of intoxicating liquor on December 24, 1950, near Dale, Pottawatomie county, Oklahoma. The charge was a first offense and a misdemeanor. The defendant was tried by a jury, convicted, his punishment fixed at a $50 fine and costs; judgment and sentence was entered accordingly, from which this appeal has been perfected.

The facts herein are briefly these. The defendant, Luther S. Robertson, was a section hand employed by the Rock Island Railway. He resided near Dale, Oklahoma, just off of Highway 270, with his nephew Russell Neely. The defendant worked on the section at Wewoka, Oklahoma, and used his automobile to go to and from work. It appears that this alleged offense occurred on the day before Christmas, December 24, 1950. On said day he had been to his brother's house for a large dinner. Thereafter he repaired to the Dale Cafe and admittedly indulged in a bottle and a half of beer. In this he was corroborated by Mr. W. O. Ross who operated the cafe. After having indulged in the beer, he left Dale and drove east on Highway 270 to his nephew's home. In getting into his nephew's home it was necessary for him to abruptly leave the highway and go down to the bar ditch into the lowlands where his nephew's house was located. There he was arrested by Highway Patrolmen Nat Taylor and D. W. McDaniels. The patrolmen testified that they observed the defendant driving on said high-

way in an easterly direction on said highway and that he was doing "quite a bit of weaving" on the highway; that he would go up against the curb and back out to the center line. The width of the road at that point is about 19 feet. They testified the shoulders are very narrow and built up one foot above the level of the roadway. They observed the defendant as they were approaching from the east going west. They passed him and turned around and followed him. They saw him pull across the left of the center of the road and leave the highway at the bar ditch. They testified they thought he had turned over. Following the defendant, however, they found that he had driven down the driveway into the Neely front yard, where they arrested the defendant. They testified that he was intoxicated at the time. They based this conclusion on his manner of speaking which was not clear. They said his tongue was thick, that he staggered when he walked and smelled very strongly of some alcoholic beverage. They related that the defendant admitted to them that he had been drinking beer. The defendant offered proof to the effect that he had an impediment of speech, and that he had a crooked wheel on his car and a bad steering knuckle which caused his car to weave. Eddie Cochran, a farmer and ex-service man, testified that he had known the defendant for 6 years, that he was present in the cafe when the defendant did drink a bottle and a half of beer, and that he was not intoxicated when he left the cafe. Mr. Ross, operator of the cafe, also testified that the defendant was not intoxicated when he left the cafe. The foregoing evidence presented a question of fact to be determined by the jury. This court has repeatedly held that where there is competent evidence in the record from which the jury could reasonably conclude that the defendant was guilty as charged the Criminal Court of Appeals will not interfere with the verdict even though there is a sharp conflict in the evidence and different inferences may be drawn therefrom, since it is the exclusive province of the jury to weigh the evidence and determine the facts. Sadler v. State, 84 Okla. Cr. 97, 179 P. 2d 479. The evidence herein is sufficient to support the jury's finding; and the trial court did not err in overruling the defendant's motion for new trial on this ground.

The next proposition urged by the defendant is that the court erred in excluding the argument by the attorney for the defendant that a verdict of guilty would cause the revocation of the defendant's driver's license. It is needless to enter into a long discussion of this issue because the same has been adversely decided to the defendant's contention. A rather recent case so holding is Thrasher v. State, 94 Okla. Cr. 105, 231 P. 2d 409, 411, wherein this court held as follows:

"Subsequent to the lodging of this appeal this court had occasion to determine the identical question here presented. In the case of Bisanar v. State, 93 Okla. Cr. 7, 223 P. 2d 795, 797. this court stated: 'The question of whether the defendant would lose his driver's license if found guilty is no part of the penalty prescribed by Tit. 47 O.S.A. § 93, and was not an issue for the jury to determine.' In Campbell v. State, 83 Okla. Cr. 108, 173 P. 2d 584, this court held that the trial court did not exceed its authority and was not inflicting additional and unauthorized punishment when it required a convicted motorist to surrender his driver's license to be forwarded by said court to the Commissioner of Public Safety.

"The revocation of a driver's license is not mentioned as a part of the punishment prescribed by the statute upon conviction for the crime here involved. 47 O.S. 1941 § 93. However it is one of the civil rights which an accused forfeits as a result of his conviction. The legislature in its wisdom, acting under its police power, has decreed that a person convicted of driving an automobile on the public highway while under the influence of intoxicating liquor should have his license revoked by the Commissioner of Public Safety. This forfeiture might be compared in a way to some of the civil rights forfeited by a person who served a term of imprisonment in the penitentiary upon conviction of a felony, such as his right to serve upon a jury, or to vote, etc."

The defendant's third contention is that the misconduct of the jury and the bailiff in discussing the penalty prescribed by law in the juryroom in the absence of the defendant constitutes reversible error. The record in this connection discloses that after the jury had retired for deliberation and the jury had read the instructions that they were not able to determine the lowest possible penalty which could be assessed against the defendant, and that the foreman of the jury called the bailiff and said to him, as follows, "We do not know the law and would like to know what the lowest fine we can give this man, I wish you would take this to the Judge and ask him for our instructions". The bailiff apparently went to the judge and returned with the statement that "from one cent up to $500.00" was the amount of fine that could be imposed. This state of facts was made the basis for the defendant's complaint in the foregoing regard as a ground for a new trial. When the matter came on for hearing on the motion for new trial, the defendant offered Mr. D. P. Sparks, the foreman of the jury, as a witness. He testified in support of the motion partially as follows, to wit:

"Q. Did you, after you returned the verdict, have any conversation with the bailiff? A. No, we read the instructions and everything, and we could not figure out what was the lowest penalty that we could give the man, and we wanted to know, so me being the foreman, and wanting to know, I called the bailiff and I said. 'We do not know the law and would like to know what is the lowest fine we can give this man, I wish you would take this to the Judge and ask him for our instruction'. Q. Did he return later? A. Yes, sir. Q. What did he tell you? A. He said 'From one cent to five hundred dollars', and that was all he said. Q. Do you recall the bailiff's name? A. I think it was Mr. Stevens. Q. He was the one that was in charge of the jury when you departed from the court room? A. Yes, sir. Mr. Reily: That is all."

Examination By The Court:

"Q. (The Court) Did the conversation of the bailiff and his answer have anything to do with the verdict which the jury rendered? A. Absolutely no. Q. Did it prejudice the defendant in any way- A. It did not. Q. You did that because you were unfamiliar with procedure? A. That is right. Q. You had never been foreman of a jury before? A. I had never been on a jury before. The Court: That is all."

Cross-examination:

"Q. (Mr. Henson): You say that this conversation with the bailiff did not prejudice this defendant in any way? A. You mean prejudice against the defendant? Q. Yes? A. No, sir. Q. If anything, it helped him? A. I would think so."

The defendant relies primarily upon the case of Ridley v. State, 5 Okla. Cr. 522, 115 P. 628, as a predicate for this contention. It is pointed out by the Attorney General that Ridley v. State, supra, was written before the harmless error statute was enacted by the Legislature of Oklahoma, Title 22, § 1068, O.S. 1951, the pertinent part of which reads as follows:

"No judgment shall be set aside or new trial granted by any appellate court of this State in any case, civil or criminal, on the ground of misdirection of the jury * * *, unless in the opinion of the court to which application is made, after an examination of the entire record, it appears that the error complained of has probably resulted in a miscarriage of justice, or constitutes a substantial violation of a constitutional or statutory right."

See in this connection Walter v. State, 29 Okla. Cr. 221, 224, 233 P. 240, 241, wherein the court said as follows:

"If we were to follow literally the rule announced in the Watson [Watson v. State, 7 Okla. Cr. 508, 124 P. 329] and Ridley Cases, supra, this case should be reversed. But since the decisions in those cases we have adopted as a part of

our Code of Criminal Procedure the statute known as the 'harmless error' statute (section 2822, Comp. Stat. 1921 [22 O.S. 1951 § 1068]), which reads as follows:"

It is well to note that in the Walter case the jury sent a note to the trial judge as follows, towit: "In the event the jury finds the defendant guilty, can the jury suspend sentence during good behavior?" The judge communicated to the jury through the bailiff that they could not suspend the sentence. The conduct on behalf of the jury, the bailiff and judge was held harmless error. The conclusion that the communication herein complained of and the information conveyed in relation thereto was harmless error is supported by the testimony of the only witness offered by the defendant in support of the motion for new trial. It clearly appears from the evidence offered by the defendant that the communication and the information received was not prejudicial to the defendant's rights but as sworn to by the witness positively was a benefit to him. Herein it quite clearly appears from the evidence offered by the defendant in support of the motion for new trial, that the defendant was not prejudiced by reason of such communication. While error, the same is harmless, Title 22, § 1068, O.S. 1941. By reason of the foregoing, the judgment and sentence herein imposed is accordingly affirmed.

JONES and POWELL, JJ., concur.