Robert Otis TIPTON, Plaintiff In Error,

v.

The STATE of Oklahoma, Defendant In Error.

No. A–12365.

Criminal Court of Appeals of Oklahoma.

Feb. 27, 1957.

Robert Otis Tipton, plaintiff in error pro se.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

POWELL, Judge.

Robert Otis Tipton was convicted in the district court of Garfield County, Oklahoma, on a charge of assault and battery with intent to kill one Albert Henry Winters, with a certain straight-edge razor; and sentenced to serve ten years in the State Penitentiary. Appeal has been perfected to this Court.

The record in this case was prepared at the expense of Garfield County, and filed by the defendant without cost deposit, and without the assistance of an attorney. No formal brief has been filed. Defendant has narrated his ideas of defense by way of letter.

Ordinarily where the defendant appeals from a judgment of conviction and no briefs are filed and no argument presented, this court will examine the evidence and ascertain if it supports the verdict, and will make an examination of the information, instructions excepted to, and the judgment, and if no material error is apparent, the judgment will be affirmed.

Since this defendant did not have the services of an attorney on his appeal, we have considered the letter written to the court as his petition in error; have carefully read the entire record, examined the information, the instructions of the court, and the judgment and sentence; and have in addition thereto carefully considered all of the matters set out in the motion for new trial filed in the trial court.

The defendant did not testify.

The State produced seven witnesses: the doctor who attended the prosecuting witness at the hospital and who testified with reference to "a large cut on his neck, five inches long, through the skin, thin muscles, and one inch into the voice box"; the prosecuting witness Albert Winters; a waitress in a beer tavern where the trouble occurred; an employee of the telephone company who was in the tavern and who administered first aid to Winters; and three police officers called to the scene.

From the evidence, it appears that the defendant and Winters left the rooming house where they both lived about 9 o'clock in the morning, and that they spent the day at various beer taverns. The prosecuting witness said that he had drunk four glasses of beer during the time, and had eaten twice, but had drunk no whiskey at any time during the day. He testified that the defendant was drinking whiskey, "and chasing it with beer", and that he had drunk at least two and a half half-pints of whiskey during the day.

The disturbance occurred about 10 o'-clock in the evening at a beer tavern. Defendant is a barber, and a razor introduced

in evidence as the weapon used belonged to him. Defendant had two witnesses, both of whom testified that they saw the prosecuting witness and the defendant in a tavern (not the one where the trouble occurred) between noon and 3 o'clock in the afternoon, and that they saw the prosecuting witness take a drink of whiskey. One of these witnesses admitted that he had been arrested for drunkenness numerous times, and that he had served a term in the state penitentiary. The other witness, who only stayed fifteen minutes in the tavern, after admitting that he had been convicted for the use of narcotics, testified:

"Q. Have you ever been convicted of any other crime? A. Well, for hypnotics, one time.

"Q. For what? A. For hypnotics.

"Q. Hypnotics,—what do you mean by hypnotics? A. *Barbiturices.*

"Q. Barbitruices? A. Yes.

"Q. Have you been convicted of any other crime? A. I guess I have,—many times."

The defendant offered four instructions, which were refused, and we find no error in this action by the court. We have carefully read and considered the instructions given, and find that they were very fair to the defendant, covered all of the issues thoroughly, and that no exceptions were taken to any of them. The jury returned a verdict of guilty, but being unable to agree on the punishment, left that to the court, and the court fixed punishment at ten years in the penitentiary. Counsel for defendant filed a motion for new trial, and made an able argument in support of the motion, but the same was overruled and exceptions allowed, and counsel gave notice of his intention to appeal to this court.

In his motion for new trial, counsel sets out fourteen specifications of error, but only argued three of them.

■ He states that the case had been at issue less than twenty-four hours at the time the trial started. The record shows that the defendant was originally represented by a court-appointed attorney; that on February 29, 1956 the defendant appeared in court and it was announced that he had employed an attorney, and the court-appointed attorney was permitted to withdraw. On January 26, 1956 leave had been granted defendant to withdraw his plea of not guilty for the purpose of demurrer, and leave was given the State at that time to amend the information "by interlineation, instanter". On April 4 the demurrer was overruled and defendant given twenty-four hours to plead. On April 23 the defendant was permitted to withdraw his plea of not guilty and to file a motion to dismiss, which was overruled, and defendant again entered his plea of not guilty. The defendant then asked for a continuance, for the reason that the case had been at issue less than twenty-four hours, which motion was overruled. We find no error under the facts stated.

■ During the voir dire examination the court permitted the State to endorse the name of Dr. R. G. Jacobs as a witness, and defendant on motion for new trial argued that he was by reason thereof entitled to a continuance. The court in disposing of such contention, stated: "It develops that any testimony of Dr. Jacobs couldn't have possibly been anything that would have prejudiced the rights of the defendant. It was clearly a formal testimony that he gave of the treatment that he administered to the victim in this case". This was within the discretion of the court, and we find no error in his action. Bisanar v. State, 93 Okl.Cr. 7, 223 P.2d 795.

■ Counsel then sets out that the court erred in refusing to grant a mistrial after certain statements of the county attorney in his closing argument to the jury, in which he "attempted to bring in testimony and matters which were not shown at all and were highly prejudicial". With reference to the statement complained of, the court said: "Now as to the statements made by the county attorney, he didn't even get to finish his statement,—he was interrupted,—as you objected I stopped him and promptly admonished the jury that they

would not consider anything the county attorney had said with reference to that matter." The record does not support this assignment of error.

This court has consistently adhered to the rule that it will not reverse a judgment of conviction on the ground that the verdict is not supported by the evidence, unless there is no substantial evidence tending to show guilt, or the evidence fails so far to support the verdict that the necessary inference is that the jury must have acted from partiality, passion or prejudice. Riddle v. State, 92 Okl.Cr. 397, 223 P.2d 379. There was ample evidence of the State in this case, if believed by the jury, to support the verdict rendered.

The defendant had the services of an attorney of his own choosing at his trial. We conclude from the record that the case was well tried, and the defendant had a fair and impartial trial, and that his rights were fully protected.

Defendant argues pro se by letter that consideration should be given to his contention that at this time, and at the time of the tragedy recited, he was a cripple by reason of the negligence of officers of Garfield County placing him in jail for drunkenness in 1947 at Enid, and failing to lock a laundry chute, and that he got in the laundry chute, presumably with the thought of escape, and fell four floors. That later, in 1952, he was again arrested for drunkenness and placed in the jail at Enid, where he got out on the roof and jumped or fell off, three stories to the ground. Such, if true, can have no bearing in this appeal.

We have here a tragedy where the old villain, John Barleycorn, played a leading role. Reckless use of alcohol on the part of defendant, it would appear, incited him in the within case into almost taking the life of a friend. But the fact of drunkenness cannot excuse defendant from the penalty of the crime committed. See 21 O.S.1051 § 153, reading:

"No act committed by a person while in a state of voluntary intoxication shall be deemed less criminal by reason of his having been in such condition."

Mott v. State, 94 Okl.Cr. 145, 232 P.2d 166.

Defendant did not enter as a defense that he was so under the influence of alcohol at the time of the cutting, that he had previously been insane from indulgence of liquors and at the time of the act charged had become so intoxicated as to cause unconsciousness of his acts and was bereft of reason. Collier v. State, 17 Okl.Cr. 139, 186 P. 963, 12 A.L.R. 839; Myers v. State, 83 Okl.Cr. 177, 174 P.2d 395.

The judgment and sentence of the district court of Garfield County is affirmed.

BRETT, P. J., and NIX, J., concur.