## NEELEY JACKSON et al. v. STATE.

No. A-7448.   Opinion Filed March 21, 1931.
Rehearing Denied May 2, 1931.
(298 Pac. 313.)

U. G. Winn and Blanton, Osborn & Curtis, for plaintiffs in error.

J. Berry King, Atty. Gen., and Ed Crossland, Asst. Atty. Gen., for the State.

DAVENPORT, P. J.   The plaintiffs in error, hereinafter referred to as the defendants, were charged by information with the crime of libel, were convicted, and each sentenced to imprisonment in the county jail for a period of one year and  to pay a fine of $1,000.   From which

judgment and sentence the defendants have each appealed to this court.

The proof, in substance, on behalf of the state, discloses the defendants Neeley Jackson and W. T. Corban, on or about the 23d day of September, 1928, went to Ringling, Okla., and secured an affidavit to be made by Mr. and Mrs. J. T. Cross, which affidavit the defendants brought back to Pontotoc county; at the time the affidavit was made and brought from Ringling, Okla., by the defendants, the defendant Neeley Jackson was a candidate for sheriff of Pontotoc county against Fred Bowles; Fred Bowles is referred to in the affidavit secured; after the affidavit was brought to Pontotoc county the defendant Corban had nothing further to do with it. The defendant W. T. Corban lived at Stratford, in Garvin county, Okla.; the defendants secured the affidavit to be used against Fred Bowles, who was opposing the defendant Jackson in the race for sheriff.

The affidavit secured by the defendants from J. T. Cross and his wife contained statements charging Fred Bowles co-operated with Dr. Yates and Arthur Bowles in causing an abortion upon their daughter Katherine which caused her death. This affidavit was procured for the purpose of being used in the campaign against Fred Bowles, and was exhibited to Tom Anderson, and several other parties.

The testimony of the state further shows that J. T. Cross testified that at one time he lived in Seminole county, Okla.; that on or about the 17th day of September, 1928,—

"Me and my wife went with the defendants to Ringling, Okla., for the purpose of making an affidavit; we made the affidavit before Mr. J. P. Wade; the affidavit pre-

sented to me is the affidavit me and my wife made before Mr. Wade. The latter part of September I had a letter from W. T. Corban. The letter marked exhibit B, is the letter he wrote me; the envelope presented to me is the one the letter was in when I received it. Exhibit C, is another letter I received from Mr. Corban."

The testimony further shows that the witness J. T. Cross was subpoenaed by the defendant.

"I stayed two nights at the Arthur Bowles home; he is one of the parties I made this affidavit against; I read and write; I delivered these letters to Fred Bowles; I don't know just how soon after the affidavit was made that I delivered them, but it was just a few days before the election; Fred Bowles came to my house; Arthur Bowles was down to my house twice in the fall before the election. I answered the Mullins letter, but I did not send him a copy of the affidavit."

Several other witnesses were called who testified to the contents of the affidavit and the circumstances under which it was secured.

The defendant Jackson, testifying in his own behalf, stated:

"I showed the original instrument to Tom Anderson; denies he ever showed the affidavit to any other person until after this prosecution had been started, and then the only instrument he ever showed anyone was a certified copy of the charge or information, which included a copy of the affidavit, which copy of the information and affidavit he secured from the court clerk. On a few occasions I exhibited this legal instrument to some of the electors of Pontotoc county; I did this to explain why I had been incarcerated in the county jail for a few days on said charge; I thought I had a right to circulate said legal document if done in good faith to explain why I had been arrested, the circumstances of my arrest and incarceration in jail; I believed the statements contained in the

affidavit were true; I circulated a certified copy of the information and affidavit without any intent of injuring or harassing anyone."

The defendant W. T. Corban, testifying in his own behalf, stated:

"I live at Stratford, Okla.; have been living there about 18 years; have known Neeley Jackson about six or seven years; I was present when the affidavit that has been introduced in evidence was secured; Mr. Jackson came to town and I was not doing anything, and went with him to the home of J. T. Cross; Mr. Wade prepared the affidavit; I did not have anything to do with it; I did not know Mr. and Mrs. Cross prior to that time; I saw the two letters introduced in evidence yesterday; I can barely write my name; I did not write these letters, had nothing to do with them; they do not have my signature; I was surprised when they were read here yesterday; I do not have the slightest idea who wrote them."

On cross-examination witness stated he got his mail at Stratford—

"My initials are W. T.; my boy usually does my writing for me."

The record is full of other testimony concerning the affidavit which was introduced in evidence; the record shows the defendants went to Mr. and Mrs. J. T. Cross and secured the affidavit; W. T. Corban, one of the defendants, denies that the letters introduced in evidence purporting to have been written by him to Mr. Cross had been written by him. All the testimony we deem necessary for the purpose of arriving at an opinion in this case has in substance been set forth.

The defendants have assigned a number of errors, alleged to have been committed by the court in the trial of their case. The errors assigned by the defendants have been grouped together and will be discussed as follows:

First, the court erred in overruling and denying the motion the defendants interposed to the information.

It is urged by the defendants that the information is insufficient to state the crime of libel for the reason that it fails to state time of the alleged offense, the name of the party or parties to whom the publication of the alleged libelous statement was made; second, because it fails to allege or state that the alleged libelous instrument was published by the defendant within three years prior to the filing of the information.

The information was filed on the 29th day of October, 1928, and charges that the offense was committed on October 24, 1928. The defendants argue that the information is insufficient for the reason that it does not state to whom the libelous article was published. In C. J. vol. 37, p. 149, it is said:

"While it is held that an indictment for libel should aver the manner or method of publication, unless it is alleged that such facts are unknown to the grand jury, it is generally held that an indictment or information for libel is not necessarily fatally defective in failing to state the mode of publication. * * * In some jurisdictions an indictment for slander must charge that the words were published in the presence of a certain person. * * * But in other jurisdictions an indictment for slander is sufficient, although it does not state to whom the words were spoken."

The defendants cite decisions from several states which they insist sustain their position that the information is defective for the reason that it does not state the name of the person to whom the libel was published. The better practice would be to state in the information the name of the party to whom the libel was published. From an examination of our decisions we find this question has never been decided by our courts. The authorities on the

question of giving the name of the party in the information to whom the libel was published are not in harmony. In some jurisdictions an indictment or information for slander must charge that the words were published in the presence of a certain person, but in other jurisdictions the indictment or information for slander is sufficient although it does not state to whom the words were spoken. In this case the information does not give the name of the party to whom the defendant published the libel. It sets forth in full the affidavit of J. T. Cross and wife, from whom it was alleged the defendant secured the affidavit containing the alleged libelous matter, and then states the defendants published it to various persons. Section 1804, C. O. S. 1921, reads as follows:

"In criminal prosecutions for libel, the indictment or information need not set forth any extrinsic facts for the purpose of showing the application to the party libeled of the defamatory matter upon which the indictment is founded, but it is sufficient to state generally that the same was published concerning the party named and the fact that it was published must be established on the trial."

We hold that the information states facts sufficient to advise the defendants of the nature of the crime charged against them. The demurrer was properly overruled.

The second proposition discussed by the defendants is that the court erred in denying the application of the defendants, at the conclusion of the evidence, to require the state to elect upon what act or state of facts it was seeking the defendants' conviction. The testimony shows that the affidavit was secured by the defendants, acting together, from J. T. Cross and his wife, and after it was signed by Cross and his wife it was brought to Pontotoc county and the defendant Jackson admitted he showed the affidavit to a man by the name of Tom Anderson; and other witnesses testify that it was shown to them. We do

not think the court erred in refusing to require the state to elect on what act or state of facts it would seek the defendants' conviction.

In the case of Age-Herald Pub. Co. v. Huddleston, 207 Ala. 40, 92 So. 193, 197, 37 A. L. R. 898, the Supreme Court of Alabama said:

"If the mailing of copies of libelous newspapers from the county of their primary publication into other counties amounts to a republication merely—and no other theory seems available—then the law is well settled that the repetition or republication of the identical libel is not a new cause of action for which a separate suit may be maintained, but is merely an aggravation of the pre-existing cause, and in proper cases may tend to show actual malice."

The admission of the defendant Jackson that he delivered the libelous affidavit to Tom Anderson constitutes its publication. Other exhibits or further circulation of this libelous affidavit only constitutes repetition or republication, and therefore there existed only one libel. The showing of the affidavit to one or one hundred people made no difference, it all constitutes one libel whether classed as repetition or republication; the offense is complete when showed or delivered to any person, and the court did not err in refusing to require the state to elect.

It is next urged by the defendant that the court erred in instructing the jury, and the failure to instruct the jury as requested by the defendants. It would serve no useful purpose to set out the instructions given and the instructions requested; suffice it to say that we find, when taken in their entirety, the instructions given by the court stated the law applicable to the facts in the case, and the court did not err in the instructions given, nor did the court err in refusing the requested instructions of the defendants.

It is next contended by the defendants that the court erred in refusing to admit certain competent and relevant testimony and in admitting certain incompetent and irrelevant testimony offered by the state. The defendants set out in their brief the testimony which they claim the court erred in rejecting. After reading the same, we do not think the court erred in refusing to permit the defendants to introduce it; that the rights of the defendants were not prejudiced by reason of the court's action in refusing the introduction of the testimony.

The last proposition argued by the defendants is that the judgment is contrary to law and not supported by sufficient evidence. With this contention we cannot agree. The testimony in this case clearly shows that the defendant Jackson was a candidate for sheriff of Pontotoc county and was opposed by the prosecuting witness Fred Bowles; that Jackson and his codefendant left their home and went to Ringling, Okla.; they took J. T. Cross and wife to Ringling and in the presence of a notary public secured the affidavit from J. T. Cross and his wife, which is the basis of this prosecution; that while talking with them they told them they wanted it to use in the campaign; after the affidavit was secured the defendants returned, and the proof conclusively shows that Jackson published the affidavit; as shown by the record, Corban, after he was at the Cross home with the defendant Jackson, wrote Cross and his wife regarding the matter.

The evidence is sufficient to sustain the judgment. There are no errors in the record possessing sufficient merit to warrant a reversal.

The judgment is affirmed.

CHAPPELL and EDWARDS, JJ., concur.