**J. G. McCLUSKEY, Plaintiff in Error,**

v.

**STATE of Oklahoma, Defendant in Error.**

No. A–12833.

Court of Criminal Appeals of Oklahoma.

April 25, 1962.

Rehearing Denied July 3, 1962.

Thomas A. Bamberger, C. E. Hall, Charles R. Jones, Dick Jones, Oklahoma City, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Owen J. Watts, Asst. Atty. Gen., Harold Theus, Oklahoma City, for defendant in error.

BUSSEY, Judge.

In order to fully understand the assignments of error raised in this appeal it will be necessary to consider in some detail the factual situation and circumstances which existed at and before the time the defendant, J. G. McCluskey allegedly committed the offense with which he was charged, that of forgery in the second degree by uttering a forged instrument.

The defendant was employed in the State Department of Agriculture in the capacity of Finance Director. The Department of Agriculture consisted of nine divisions. Each division was administered by an executive in charge and they in turn were subject to the supervision of Harold Hutton who was the President of the State Board of Agriculture. Mr. Hutton became the president of the Board of Agriculture in 1951 and occupied that position at the time the alleged crime took place and at the time this matter came on for trial.

In addition to the funds appropriated to the Department of Agriculture by the Legislature, which in the year the alleged crime took place was approximately $500,000, each of the nine divisions above mentioned collected fees and other charges according to their particular functions, totaling in excess of the amount of $500,000 per annum. As the funds were received by the various subsidiary divisions a deposit slip was prepared by the individual department making the deposit and sent to the Finance Department, along with the checks and currency that made up the amount of the deposit. In the finance division of the department the deposits were left with the finance director and receipted by him in the amount of the deposit. Upon receiving the funds making up the deposits, the director, when he was present would place them in a safe provided for their safekeeping which was located in his office. When deposits were brought in while he was absent they were placed in the safe by his secretary. There were three employees in the finance division who knew the combination to the safe but the director alone had custody of the key to a cash collection box in which the funds received were placed. It was the practice of the finance division to cash personal checks for the employees of the Agriculture Department and often they would cash checks for others who were personally known to them.

From time to time the finance director would prepare deposit slips and designate the specific fund or funds to which the receipts were to be credited when deposited by him with the State Treasurer.

McCluskey had occupied the position of Director of the Finance Division for the State Department of Agriculture prior to the selection of Mr. Hutton as president of the State Board of Agriculture and he remained in such capacity until relieved by Governor Raymond Gary on the 8th day of September, 1958. He was relieved by Governor Gary after a meeting with Mr. Hutton, Mr. Louis Nelson, the defendant, and the Governor in the latter's office in the State Capitol. At this meeting a discussion took place concerning alleged irregularities and financial discrepancies revealed by an audit made by the State Examiner and Inspector.

Upon learning of the alleged irregularities and discrepancies existing in the finance division of the Agriculture Department Governor Gary notified Mr. Bill Berry, County Attorney of Oklahoma County who after investigating the matter charged the defendant with forgery in the second degree by uttering a forged instrument.

Mr. Harold Hutton was the primary witness called by the state to identify the transaction upon which the charge in the information was based. His testimony will

be analyzed in some detail in order to better understand at the outset the method the State followed to prove their case.

Mr. Hutton testified that he and the defendant approved claims from the various divisions of the Department of Agriculture which in effect acknowledged the receipt of materials and supplies ordered from time to time by the State Board of Agriculture and its various divisions. He stated that he was familiar with the defendant's signature and handwriting. He identified State's exhibit 1 as being a receipt issued to the Veterinary Division for a deposit of $666.75, dated November 29, 1956 and bearing J. G. McCluskey's signature. He stated that State's exhibit 1-A was a list of items that made up the total of $666.75 as a deposit slip, a copy of which went back to the Veterinary Division along with the receipt.

He then identified State's exhibit 2 as a letter to Mr. Curtis Dolph, who was with the Oklahoma Printing Company, Guthrie, Oklahoma and that it bore the signature "Gilbert" over the typewritten name "J. G. McCluskey, Director of Administration." He stated that the signature appeared to be in the defendant's handwriting. He identified State's exhibit 3 to be an invoice from the Oklahoma Printing Company, directed to the State Department of Agriculture, State Capital Building and bearing J. G. McCluskey's signature. He identified State's exhibit 4 to be a claim that serves as a jacket for an invoice of the Oklahoma Printing Company in the amount of $560, bearing invoice date of October 13, 1956, and warrant number 306289, and identified J. G. McCluskey's signature thereon. He identified State's exhibit "5" to be a State warrant payable to the Oklahoma Printing Company in the amount of $560, warrant number 306289, which was the same warrant number as that on the jacket.

He was requested to examine the endorsements on the back of the warrant and state what they were. He stated that there were two endorsements, one being "Oklahoma Printing Company, Curtis E. Dolph" and the second "The Department of Agriculture Trust Fund, for deposit with the State Treasurer." The State then offered into evidence exhibits 1 through 5 and the same were admitted without objection.

The net effect of this method of proof was to attempt to show that the defendant had prepared exhibits 2 through 5 of his own accord when there had not in fact been a $560 transaction with the Oklahoma Printing Company or Curtis E. Dolph and then cash them out of the funds the defendant was in charge of and pocket the money to supplement his income. The instruments evidencing the fictitious transaction would then be present to cover the situation as it actually existed, thus making it appear to be legal and in the ordinary course of business the same as exhibits 1 and 1-A.

Thereafter and over the objection of the defendant the State was allowed to prove some twenty-four other transactions involving payments to payees of State Warrants of the Oklahoma Printing Company, J. H. Watson and Dr. E. R. Walker. Seven of the 24 other transactions involved claims and invoices from the Oklahoma Printing Company, which was the same payee and the same Company appearing on the warrant alleged to have been forged in the information. The claims and invoices all contained the signature of the defendant as the officer "receiving and checking the material," and they show that the defendant approved two of the seven and Mr. Hutton approved the other five. Four of the seven warrants were deposited in the trust fund in the same manner as the one upon which the charge was based, three were endorsed with the name J. G. McCluskey on the back, in addition to the endorsement of the "Oklahoma Printing Company". In regard to these seven transactions the testimony of the owner and manager of the Oklahoma Printing Co., Mr. Curtis E. Dolph, was the same as it was in connection with the transaction set forth in the information. He testified that he did not prepare the invoice, sign the claim, endorse the warrant, receive the money, do the print-

ing, furnish the printing, or authorize anyone to have anything to do with them in behalf of the Oklahoma Printing Company. There were nine transactions involving State warrants issued to one J. H. Watson who was either a nonresident or fictitious person. All nine of the claims bore the signature of the defendant as one of the approving officers showing by his certificate that he "received and checked equipment." Eight of the nine claims bore the endorsement of J. H. Watson and was followed by the signed name "J. G. McCluskey." One warrant bore only the endorsement "J. H. Watson" and was deposited in the trust fund in the same manner as the warrant involved in the information. The defendant did sign the claim in connection with this warrant. All of these warrants went through the office of the State Treasurer in like manner as did the warrant upon which the charge was based.

There were eight claims and warrants involving Dr. E. R. Walker. Seven of the eight claims bore the defendant's name as the approving officer. In addition his signature appears as approving officer certifying that he "received and checked the material." The other six show that Mr. Hutton's signature appears as the approving officer. Mr. Hutton denied that any of the signatures were his and stated that in his opinion they were written by the defendant due to the style of the handwriting. Five of the warrants issued in connection with the Walker transaction contained the endorsement of the defendant, in addition to the endorsement of Walker. Two of the eight were deposited to the trust fund. One warrant contained no further endorsement except that of Walker and was deposited in the personal bank account of the defendant. In reference to this particular warrant the defendant did not approve the claim. In reference to the eight Walker transactions, Walker testified that he did not sign any of the claims, did not endorse any of the warrants and did not do the work nor receive the money.

Other witnesses were called by the state to prove and identify the exhibits offered and the general procedural aspects of the Department of Agriculture.

The defendant's theory and defense was that he did not commit the act alleged in the information and was not guilty of the crime charged in the information.

Prior to the trial of the case the defendant filed a written demand upon the county attorney requesting that he be provided an opportunity to examine all the claims, warrants and other documentary evidence which was going to be offered by the state in the trial of the case. A hearing was held before the Honorable Glen O. Morris, one of the District Judges of Oklahoma County. The county attorney complied with the defendant's request by providing him with photostatic copies of all the claims, warrants and other documentary evidence in his possession at that time. On March 13, 1958, some six days prior to trial the court granted permission to the county attorney to endorse 13 additional witnesses on the information. The order containing the list of witnesses and their addresses was served upon the defendant through his attorney. Some three days prior to trial the trial court permitted the county attorney to endorse 8 additional names of witnesses upon the information which was likewise served upon the defendant. The defendant filed a written objection to the order authorizing the endorsement of additional witnesses. In both instances a hearing was held thereon before the Honorable Fred Daugherty, one of the Judges of the District Court of Oklahoma County, prior to the trial of the case. The county attorney advised the defendant who the witnesses were and what he expected to prove by them and further stated that he had no objection to the witnesses discussing their testimony with the defendant or his attorney, prior to the trial of the case. Thereafter the defendant filed a written motion for a continuance alleging that he was unable to adequately prepare for trial and that he had not had an opportunity to interview the state's witnesses al-

though he had made a diligent effort to do so. No testimony or evidence was offered to support the motion for continuance and the motion was denied.

There are many assignments of error raised on appeal to this Court and we will deal with them in accordance with those we deem to contain some merit. First the defendant asserts that the trial court committed error in permitting the County Attorney to endorse the names of additional witnesses on the information in the manner related above. By the provision of 22 O.S. § 303 (1951), and the cases decided thereunder, permission of the trial court to endorse additional names of witnesses on the information is a matter of judicial discretion resting in the trial court. Wood v. State, Okl.Cr., 321 P.2d 391, and Tipton v. State, Okl.Cr., 308 P.2d 670. It is not reversible error for the trial court to allow the endorsement of additional witnesses unless it clearly appears that the granting of such permission was an abuse of discretion and prejudicial to the substantial rights of the defendant. Anthony v. State, 55 Okl. Cr. 260, 28 P.2d 1115 and Fitzgerald v. State, 75 Okl.Cr. 192, 129 P.2d 867. A close examination of the record and the entire testimony of each additional witness endorsed discloses that the testimony was either cumulative or for the purpose of identifying documentary evidence involved in the twenty-four collateral transactions which the state proved. The admissibility of these transactions will be considered at a later point in this opinion but in considering this point we are of the opinion that the testimony of the additional witnesses was not injurious to the substantial rights of the defendant. However, one exception should be noted. Dr. Gordon Martin of Dallas, Texas, was called by the state as a handwriting expert. His name was among those endorsed on the information six days prior to trial. The defendant objected to this particular witness, stating that he should be entitled to interview him in order to avoid the element of surprise. The record discloses that the state had not received a complete report

from the witness at the time of the hearing and informed defense counsel as to what they expected him to testify to in the event he concluded that certain signatures on documents submitted to him for examination were not genuine. The same documents, (photostatic copies thereof) were furnished to the defendant by the state and the documents which had been submitted to the witness were specifically pointed out and enumerated to defense counsel. Therefore we conclude that the defendant could not have gained any information through an interview with the witness assuming he was unable to do so. We can see no substantial prejudice resulting from these facts.

We feel that it is necessary to call attention to the recent case of McCollough v. State, Okl.Cr., 360 P.2d 727, 731, decided by this court since the briefs in the instant case were filed. At first reading it would appear that the principle there applied would require a reversal in the case at bar. However, there are two distinguishing features that should be noted. First, in the McCollough case the witness, Haskell Sturtz, was a very important and material witness. The defendant was charged with operating a motor vehicle while under the influence of intoxicating liquor. No one could place the defendant under the wheel of said vehicle or establish that he was driving the same except witness Haskell Sturtz. Therefore the primary distinguishing factor is that the witness in the McCollough case whose name was endorsed on the information one day before trial was a material witness, whereas, earlier indicated, the witnesses endorsed in the instant case were not necessary to prove the crime charged in the information and their testimony was on collateral matters.

As was said in the McCollough case, "The materiality of the witness is an important factor that must be taken into consideration in arriving at a conclusion." This statement is in reference to matters the trial judge should consider in determining whether or not the state should be allowed to endorse additional witnesses prior to

trial. The reason is also aptly stated by Judge Nix in the McCollough case as follows: "Before the trial judge could intelligently pass upon this matter a showing must be made of sufficient consequence as to give the trial judge sufficient facts upon which to exercise his judicial discretion."

■■ The other distinguishing feature in the case at bar is that when the testimony of the witnesses complained of was offered in the trial of the case, no objection was interposed nor was a motion to strike the testimony of the witnesses made, although a motion for continuance was made at the outset of the trial. We have taken the liberty to examine the record in the McCollough case and find that proper objections were taken by counsel at every stage of the trial. A motion for continuance was made before the witness Sturtz was permitted to testify, defense counsel objected on the grounds that the witness was endorsed by surprise, and at the close of the testimony the proper motion to strike said testimony was interposed. Since the proper objections were not made during the course of the trial in the instant case the defendant is deemed to have waived any right in this regard that existed. A defendant in criminal cases may waive any right, not inalienable, given him by statute or by constitution which can be relinquished without affecting rights of others and without detriment to the community at large; and such waiver may be made either by express agreement or by conduct, or by failure to insist upon a right in seasonable time. Emerson v. State, Okl.Cr., 327 P.2d 505.

■ The defendant also raises objection to the additional endorsements because the post office addresses of the witnesses were not listed and the business addresses were. Again, we note that these were not material witnesses and were people with whom the defendant was well acquainted and with whom he had worked. No prejudice could have resulted in this regard.

The next assignment of error is that the trial court gave an erroneous statement to the jury before the evidence of other alleged offenses was admitted in which he attempted to inform them of the purpose for which such evidence was going to be admitted. In order to fully understand this assignment of error we must set out the events that occurred in the trial when the State first attempted to prove other transactions in which it was asserted the defendant was involved. The case made reveals the following took place outside the hearing of the jury:

"Mr. Bamberger (Counsel for defendant): Comes now the defendant and objects to any evidence relating to any purported invoices other than those substantiating the alleged forgery set forth in the information herein.

"The Court: You are now going to attempt to prove similarity?

"Mr. Berry: Yes, sir.

"The Court: The objection will be overruled and exception allowed; and at this time I will allow you a blanket exception on any testimony relating to similar instances which may indicate a common plan or scheme or motive and intent; and at this time I will instruct the jury as to the fact that this is not evidence of the guilt of the particular forgery but may be considered under and for the purpose of motive and intent and common plan or scheme to cheat and defraud.

"Mr. Bamberger: It should be limited to that.

"The Court: Yes, I will instruct them finally but I will also instruct them now so they will understand it.

"Mr. Bamberger: We would like to request the court to consider this evidence out of the presence of the jury first to determine whether it is sufficient to establish a connection between this defendant and these other purported incidents; in other words, it is our understanding that the mere evidence that there was another forgery committed is not sufficient, but that they must prove this defendant was

guilty of it before it constitutes evidence concerning a common scheme or design or before it can be offered as evidence in this case.

"The Court: I don't feel that I should follow that procedure, but if any of these other instances do not conform as being similar to the one charged then I will entertain objections to it and I will instruct the jury to disregard it at that time, and allow exceptions to your objection.

"Mr. Bamberger: And we now want to also object to each and every one of these purported instances.

"The Court: With this ruling, you will have a blanket objection to all of them.

"Mr. Bamberger: Will it be necessary to make objection to each individual one?

"The Court: No, it will not be necessary for you to object to each one.

"Mr. Berry: At any time we stop on what we say is proof of scheme and plan and intent and motive, I will notify you, and I understand he will have a blanket objection to all of the testimony.

"Mr. Bamberger: I want more than a blanket objection: I want also an individual objection to each individual one that are identical.

"The Court: You have a blanket objection and it gives you that; it gives you each and every one of them, and if they don't meet the test I will withdraw it from the jury's consideration.

"Mr. Bamberger: All right, thank you."

(In the hearing of the jury)

"The Court: Now, Ladies and Gentlement of the jury, the court wants to give you some instructions at this time that may assist you in your consideration of this case. The defendant in this case is charged in connection with the one warrant, or one incident. It is the $560.00 warrant involving the Oklahoma Printing Company, about which you have heard considerable testimony to date. Under the law of this State, it is proper for the State of Oklahoma to introduce evidence of other similar acts to this one set forth in the information, for the sole and only purpose of presenting evidence as to the motive and intent of the defendant to cheat and defraud the State of Oklahoma under a common scheme or plan of action to that end. The court is now going to let in testimony as to other acts which the State alleges are similar in nature to the one charged in the information. I want you to understand, that this testimony, while involving other acts and other warrants, must be similar, and then must only be considered by you on the score of motive and intent to cheat and defraud under a common plan or scheme; and you should not consider these other similar acts as being proof of guilt of the act charged. In other words, a man cannot be convicted of a specific act charged in the information by proof of guilt of any other acts, so you are not to consider the guilt of this act because you might find him guilty of the other acts. These other acts are being put in here if they are similar, and consider them only for the purpose of motive or intent under common plan or scheme. All right."

The State then proceeded to prove the twenty-four transactions mentioned earlier in this opinion. Counsel for defendant contends that the court should first have considered the admissibility of the other offenses out of the hearing of the jury. However, the record discloses that at the pre-trial conference had in this case the matter was fully discussed at length by both sides and the trial judge then indicated that he would decide in the interim before trial whether or not he was going to admit the transactions during the trial. Although this is not the usual procedure followed in criminal cases we believe that it is a matter

which was within the sound discretion of the trial judge. Obviously he was aware that this would be a lengthy trial and made every effort to simplify and expedite the matter. We commend him for his diligent efforts in that regard and observe that no harm resulted to this defendant. In an extremely complex and lengthy case as the one now before us, the trial court should be given latitude in how he conducts the trial and his exercise of discretion will not be disturbed by this court unless it is clear that it was prejudicial to the defendant. Also, in passing, we note that counsel did not object to the particular instruction given the jury as set out above. This is not to say that had the objection been interposed it should have been sustained. If counsel is of the opinion that error is being committed an objection should be interposed to the manner in which the trial court proceeds in order to properly present the same to this court. In this instance counsel did not object to the particular instruction given.

Next, the defendant contends that the trial court committed error in permitting evidence to be introduced for the State over the objection of defendant to so-called other offenses in its evidence in chief. We need but call attention to the rule that evidence of separate and similar offenses is admissible when it is material and proper to show (1) Motive, (2) Intent, (3) Absence of mistake or accident, (4) Identity of the person charged with the commission of the crime for which an accused is put on trial, and (5) Common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other. An examination of the other transactions and exhibits introduced to prove them clearly reveals that the defendant was linked with all of them by either his signature, the evidence of passage, by endorsements as approving officer, or as one certifying and checking the material involved. This makes each of them related to each other and to the crime charged. They tend to establish a systematic scheme and were proper for the jury to consider in connection with the charge contained in the information. Furthermore, the following instruction by the trial court was a proper limitation on the other offenses:

"Certain evidence has been presented tending to show that the defendant committed other acts similar to that charged in the information. Should you find from the evidence beyond a reasonable doubt that such other acts were, in fact, committed by the defendant, then you may, if you so elect, consider the same as such evidence may or may not in your judgment tend to show that the act charged in the information was a part of a common scheme or plan including other similar acts, or as it may or may not in your judgment tend to establish the motive or intent with which the act charged in the information was committed by the defendant. But you are instructed that you may not consider the evidence presented with reference to other acts similar to that charged in the information for any other purpose, and you shall not consider such evidence with reference to other similar acts as proof of the specific act or offense charged against this defendant in the information in this case."

It is the further contention of the defendant that some of the collateral transactions were too remote in time and were thus inadmissible against the accused.

He seriously urges that this being true, they were too remote to have any probative value in the instant case and were transactions upon which the defendant could not be tried because prosecution would be barred by the statute of limitations.

There might be much merit to this contention had the time interval between the separate acts been greater, but these transactions were common links in a chain occurring over a period of two years, from the year 1956 to and including the year 1958. As has been said heretofore, they

established a common scheme to cheat and defraud the State. (The determination of whether or not a previous offense is admissible as evidence of a common scheme to cheat or defraud by reason of the time interval between its commission and the commission of the offense upon which the accused stands trial cannot be reduced to a mathematical certainty by imposing a fixed period of time as the dividing line between admissibility and inadmissibility.)

The facts of each case may vary greatly and it is for the trial court to determine, upon the basis of the facts peculiar to each case presented before him, whether or not the evidence there presented is admissible.

To hold that evidence is inadmissible when the accused may not be tried thereon under the statutes of limitations would be to establish an arbitrary rule based neither on logic nor reason.

Suffice is to say that in the instant case the separate transactions were closely enough connected in point of time with the offense for which the accused was tried to render them admissible.

Next the defendant asserts that the trial court erred in overruling defendant's motion for a mistrial because of the improper and prejudicial statements made by Maxine Watkins in the presence of the jury. This witness was employed as a secretary in the Department of Agriculture at the time the crime charged in the information is alleged to have occurred. Among her duties in that capacity was to notarize signatures as a notary public. The entire line of questions asked her by the State was in reference to one of the collateral or other transactions which was proved. She identified her name as appearing on certain exhibits introduced by the State and her jurat as a Notary Public. When asked if she remembered signing a particular State Warrant she stated that she couldn't. Thereafter the Court asked the following question and the following appears in the case-made:

"The Court: Do you remember the circumstances in connection with your signing it: If so, tell the jury about it. A. Well, the only thing I can say about it is that when Nell or somebody else, is out, Mr. McCluskey brings it to me, I mean—.

"Mr. Bamberger: That's what the County Attorney wanted her to say.

"The Court: Just a minute.

"Mr. Bamberger: I object to that and ask it be stricken—

"The Court: If you will let me, I will take care of it. The jury will disregard that last answer. Now, your signature appears on it? A. Yes, sir.

"The Court: Do you remember any specific instance about your putting your signature on a document? A. No.

"The Court: All right, put your next question.

"Mr. Berry: That's all."

It is obvious that this testimony was in reference to a collateral transaction and not necessary in order for the State to prove the transaction set out in the information. No prejudice resulted from the testimony set out above. However, if there was any possible prejudice at all, it was removed when the court instructed the jury to disregard the answer.

The defendant next contends that he was prevented from having a fair trial by reason of the conduct of the judge in addressing certain interrogatories to him in the presence of the jury indicating that he was of the opinion the defendant was guilty as charged. Again, it will be necessary to relate a part of the testimony as it took place in the trial to fully understand this assignment of error. While the defendant was on the witness stand and being questioned by his own counsel the following questions and answers appear in the case-made:

"Q. Now, I am handing you a bunch of exhibits, some of which are warrants made payable to Dr. E. R. Walker, and some payable to the Oklahoma Printing Company, and I am going to

ask you whether or not you forged any of these endorsements on any of those warrants?

"Mr. Theus: (Attorney for State) Object to that unless they are identified by number.

"The Court: Are those all of the Oklahoma Printing Company now?

"Mr. Bamberger: Your Honor, all I have been able to find. No, here is one to E. R. Walker. I am not able to find the ones to that other Veterinarian.

"The Court: Well, there are seven Oklahoma Printing Company warrants, and eight from either E. R. Walker or R. E. Walker, or Dr. R. E. Walker, and nine J. H. Watson. Can you testify as to all of those that have been introduced in evidence here today?

"Mr. Bamberger: Your Honor, I can't seem to locate the Watson warrants.

"The Court: Answer my question, Mr. Witness. A. I am counting these to see if I have them all.

"The Court: You have heard all these warrants put in evidence? A. Yes, I have, sir.

"The Court: You have heard the testimony about the endorsements on them? A. That's correct.

"The Court: Are any of those endorsements on there, forgeries committed by you? A. No, sir."

This was the extent of the alleged prejudicial questions by the judge. It should be noted that counsel strenuously argues that the interrogatories made by the court were highly prejudicial to the defendant but the record reveals that no objection was made at the time the alleged misconduct took place nor was a mistrial requested. It is asserted that this error is fundamental in that it violated the constitutional right of the defendant to be tried without prejudice under Article 2, Section 6 of the Oklahoma Constitution. Counsel argues that the firmness and authority displayed by the court is

an attempt at intimidation by the trial court when he said, "answer my question Mr. Witness." With this we cannot agree. The court had directed a question to the witness and before the witness could answer, defense counsel interrupted with his statement. Then the court merely instructed the witness to answer the question previously asked him by the court, which was done.

 Counsel argues that the very last question interposed by the court assumed one of the facts in dispute when the court asked the accused if any of those forgeries had been committed by him, with emphasis on the word "forgeries." As the testimony reveals, defense counsel asked essentially the same question which had remained unanswered until the court was finally able to aid counsel in getting the answer. When taken out of context, as was done in the brief of defendant it might possibly be said that such a question was prejudicial to the defendant. However, when read in connection with the line of questioning at this point in the trial, it is clear that no prejudice resulted.

 The defendant next urges that it was error for the trial court to allow the testimony of ex-Governor Raymond P. Gary to be presented by the State in rebuttal. Again we must note that no objection was made to this testimony when it was offered. We do not agree that it was of such a prejudicial nature so as to constitute fundamental error. The testimony of this witness was in substance the same as that of two other witnesses for the State, Hutton and Nelson. Although it was more specific in some instances than that of the two named witnesses we will not be led into weighing the evidence and deciding the credibility of witnesses called in the course of the trial. Counsel attempts to make an issue out of the fact that certain witnesses appeared in his opinion to have a better memory than other witnesses. This court has often stated, the jurors are judges of witnesses' credibility and weight of their testimony. Their verdict will not be dis-

turbed if there is evidence to support their finding.

▮▮▮ Next the defendant asserts that his demurrer to all the evidence presented by the state should have been sustained and it was error for the trial court to permit the case to go to the jury. An examination of the record clearly reveals that the evidence presented by both sides was conflicting in many instances. The well established rule under such circumstances is that where the evidence is conflicting and different inferences can be drawn therefrom, it is the province of the jury to weigh such evidence and determine the facts. Larkey v. State, 95 Okl.Cr. 338, 245 P.2d 751.

▮▮ Next the defendant asserts that the trial court erred in giving an instruction on other offenses. As already indicated hereinbefore, it was not error to permit the proof of other related offenses and it follows that it was not error to instruct the jury in this regard. The instruction is set out earlier in this opinion and we feel that it was a fair and just statement of the law and a proper instruction.

▮▮ Other assignments of error are listed and based upon the trial court's charge to the jury. Instructions to the jury must be examined in light of the entire record and if as a whole they are substantially correct, they will not cause reversal. Stokes v. State, 86 Okl.Cr. 21, 189 P.2d 424, 190 P.2d 838, and Jackson v. State, 50 Okl.Cr. 422, 298 P. 313. The instructions in the instant case fully and adequately covered all the evidence presented by both the defendant and the State.

▮▮ Finally, it is asserted that the punishment assessed by the jury was excessive under the circumstances because a large number of people believe in the integrity of the accused. This court is urged to believe that the defendant has already been grossly punished by what has transpired, and the serving of so much as one days' imprisonment in the penitentiary spells ruin forever. However, we will only modify a judgment in furtherance of justice. We do not have the power to modify a sentence unless we can conscientiously say that under all facts and circumstances the sentence is so excessive as to shock the conscience of the Court. Austin v. State, Okl.Cr., 278 P.2d 240; Jones v. State, 84 Okl.Cr. 81, 179 P.2d 484.

We are of the opinion that an observation in reference to evidence brought out by the defendant for the first time in the cross-examination of the State's first witness, Mr. Harold Hutton, is proper. Counsel for defendant went into a matter which was testified to have happened in the year 1951. It was in regard to the defendant being "short" in certain funds for which he was responsible. The court refused at first to admit the testimony because he believed it to be prejudicial to the defendant, but at the repeated request of defense counsel it was admitted.

As indicated earlier, there was conflicting evidence presented in this case but we are of the opinion that the evidence is of sufficient quantum to support the jury's verdict even though the maximum penalty of 7 years in the penitentiary was imposed. The evidence of guilt in our opinion was overwhelming. We need only consider the position that this defendant occupied. He was a public officer bestowed with a great amount of trust and confidence. The undisputed evidence is that he had once before been caught in the process of dealings that were not in accordance with the office he held and had been given another chance. We are compelled to comment upon the procedure used in the division for which the defendant was responsible. We have never seen such loose handling of public funds and are confident that the same situation does not exist today.

As a further assignment of error, the defendant contends that:

"The accumulation of errors deprived the defendant of a fair trial and deprived him of due process of law to which he was entitled under the Constitution of Oklahoma and the Consti-

tution of the United States of America.

"* * * If the Criminal Court of Appeals does not find that any one of the foregoing errors, standing alone, was sufficient to justify or require a reversal of the conviction, that the accumulation of such errors deprived the defendant of a fair and impartial trial and caused a denial of due process of law guaranteed him by Article 2, Sections 7 and 20 of the Oklahoma Constitution and by the Fifth and Fourteenth Amendments to the Constitution of the United States."

The defendant cites as authority for this proposition the case of Lyons v. State, 77 Okl.Cr. 197, 138 P.2d 142, 322 U.S. 596, 88 L.Ed. 1481, in which the United States Supreme Court held:

"The 'due process of law' provision was intended to guarantee procedural standards adequate and appropriate to protect people charged with, or suspected of crime, and that a judgment depriving one of due process of law was void."

In further support of the above assignment of error, the defendant cites Ex parte Cannis, 83 Okl.Cr. 113, 173 P.2d 586, and Brown v. State, 39 Okl.Cr. 406, 266 Pac. 476, in which this court held:

"Every person charged with crime, whether guilty or innocent, is entitled to a fair and impartial trial according to the due and orderly course of law.

Lastly, as authority in support of the above proposition, the defendant cites Kiser v. State, Okl.Cr., 93 P.2d 58, in which the court said:

"A fair trial for a criminal offense consists not talone in an observation of the naked forms of law, but in recognition and just application of its principles."

Unquestionably, the defendant's assertion of law as above set forth is correct, but its application to the particular facts of this case falls far short of that accumulation of errors which, when considered together, deprive an accused of his right to procedural due process.

We are of the opinion that the right of the accused to due process was fully protected and that this contention is wholly without merit.

We also take the opportunity to commend all those involved in the trial and appeal of the case for their diligent efforts. The testimony was voluminous and the facts on the surface appear to be extremely complicated. The trial judge is to be commended for the orderly and judicious manner in which he presided which made the task of this court much easier. The case was ably presented by the State and the defendant's rights were vigorously protected by defense counsel.

Therefore, for the reasons stated herein, this case is affirmed.

NIX, P. J., and BRETT, J., concur.