**Alton J. WILDS, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–74–672.**

Court of Criminal Appeals of Oklahoma.

Jan. 14, 1976.

Rehearing Denied Feb. 13, 1976.

D. C. Thomas and Rick Chew, Oklahoma City, for appellant.

Larry Derryberry, Atty. Gen., James L. Swartz, Asst. Atty. Gen., Byron L. Wilhite, Legal Intern, for appellee.

## OPINION

BLISS, Judge:

Appellant, Alton J. Wilds, hereinafter referred to as defendant, was charged, tried and convicted by a jury in Oklahoma County, Case No. CRF–73–3235, of the offense of Making False Entries on Accounts Relating to Monies Received on Behalf of the City of Oklahoma City, Oklahoma, in violation of 21 O.S. 1971, § 341. He was sentenced to one (1) year in the Penitentiary and a fine of One Hundred ($100.00) Dollars, and a timely appeal has been made to this Court.

The lengthy record before us evidences the prolonged and complicated nature of this trial, which lasted some four and one-half days with 42 witnesses and over 50 exhibits. The witnesses and exhibits introduced by the State can be divided generally into two parts: Those showing the proper and usual bookkeeping procedures of the Utilities Division of The City of Oklahoma City, and those showing evidence of a similar plan or scheme to that of the offense charged.

The only portion of the bookkeeping practices that concern this case is that surrounding payments made at the office of the Utilities Service Division at City Hall. Generally, that procedure is as follows. Payment is made to a cashier and the customer is given a receipt, which may take the form of a receipt written by the cashier, a carbon of which becomes the portion used to credit the payment to the customer's account, or it may be a stub from the customer's water bill, in which case the bill itself is used to credit the account. At the

same time, the cashier maintains a tally sheet where the transaction is recorded. At the end of the working day, the tally sheet, the money received and the portions of the bill retained by the cashier are placed in a box. All the cash boxes are then placed in a safe in an inner office of the Utilities Service Division. During at least a portion of the period in question, this safe was in the office of the defendant. The following morning, the office manager (the defendant for the period in question) totals the money and balances it against the receipts. (In the absence of the defendant, other employees of the Utilities Service Division performed this function.) The two almost always balance, the only variance being that of a few dollars or cents, generally chargeable to errors in making change. In the event there is a great discrepancy, the tally sheets are examined in an attempt to reconcile the two totals. After reaching a balance, the money and the receipts are delivered to the office of the City Treasurer where another balance is made. Then the money is deposited to the City's account and the portions of the bill and the carbons of the receipts are forwarded to Data Processing where they are used to give credit to the customers paying the bills.

There was testimony that it was possible to remove money from the cash box or safe and at the same time remove a bill for a like amount and the amounts forwarded to the City Treasurer would balance. To make sure the balances coincided with the actual amount received by the Utilities Service Division, it would be necessary to check them against the tally sheets. The tally sheets for the time period involved in this case are missing.

Occasionally an error occurs in this bookkeeping process, and a payment is credited to the wrong account. Generally, the error is caused when numbers are copied incorrectly by a cashier preparing a duplicate bill or by a keypunch operator in the posting of payments to the customer's account. When errors are brought to the attention of the Utilities Service Division, corrections are made by completing *two* journal entry cards, one to debit the account credited in error, and another to credit the proper account. These two journal entries are cross-referenced by name and account number so that the transaction can be double checked. From time to time the department is unable to discover where an account was not credited. In those instances, the proper account is credited and no debit is made to another account. However, in these cases a notation to that effect is made on the single journal entry card.

The charge against defendant in this case was that he knowingly made a false entry to the account of J. N. Warren, a customer of the Utilities Service Division. The state's case showed that Mr. Warren paid $100.00, by check, to the Utilities Service Division, on March 19, 1973. He did not have his bill with him, so a duplicate bill was made and Mr. Warren was given the original as his receipt. Mr. Warren's draft was deposited on March 21, 1973, by the City Treasurer's Office. Mr. Warren testified that he never notified the Utilities Service Division of any error in his account. However, on March 27, 1973, the defendant prepared a *single* journal entry card which credited $100.00 to Mr. Warren's account. The explanation of the transaction reads: "payment applied to wrong account see Debit JE & Cash Stub." Proper office procedure required that in addition to the term "see Debit JE" the explanation should have shown the name and account number of the account debited by that journal entry. This did not appear on the card and there was testimony that no debit journal entry of that time period, debiting that amount, could be found. There was testimony that making such a card without the money having *first been erroneously credited* constituted a false entry.

Other testimony was presented showing that the identical transaction occurred with the accounts of 14 other customers who

paid their bills, never reported errors in their accounts, and subsequently, without their knowledge, had their accounts credited with a single journal entry card carrying an explanation identical to that on the card crediting the account of Mr. Warren.

There was also testimony that such errors rarely came to the attention of the Utilities Service Division personnel unless the customer whose account was not credited called about the error, or a customer whose account was erroneously credited notified them. Neither of these events had occurred in the instances introduced at trial. There was also testimony that these single entries could be used to insure no complaints would be made by customers whose accounts were never credited. The entries could have been made necessary if someone had removed a sum of money from the funds received by the Utilities Service Division and had also removed a receipt used to credit the accounts. The removal of these two items would keep the day's totals in balance, but would have meant an account would not have been credited. It was the State's theory that defendant had, in fact, made the false entry to cover up his removal of funds from the Utilities Service Division. The State also introduced as evidence two items taken from defendant's desk drawer after his resignation. These two items were the portions of the bill used to credit customers' accounts and were several weeks old. There was testimony that there was no reason for these billing stubs to have been in the desk of the defendant rather than forwarded to Data Processing.

The defendant introduced a number of witnesses who testified to his reputation for honesty. The defendant himself took the stand and admitted the journal entry card relating to Mr. Warren's account was in his handwriting. He stated that occasionally journal entries were completed in just the manner as Mr. Warren's when they had not yet located the account which had been improperly credited. He fur-

ther testified that all the entries made by him were done in good faith. He further testified that it was his responsibility to make these entries when errors came to his attention, whether the error was reported by one of the customers of the Department or by one of the clerks. It was also the testimony of defendant that prior to May, 1973, it was not his responsibility to balance the money received with the billing stubs, and that after that time he usually, but not always, did so. He also testified that he was uncertain of the date the office safe was placed in his office, but that it had not always been there.

■ Defendant brings four assignments of error. The first two will be considered together as they are related. Defendant alleges that the information is defective because it fails to allege facts showing all the material elements of the offense, and that a demurrer to the evidence at trial should have been sustained for the same shortcoming. We do not agree.

Defendant is charged under Section 341 of Title 21. This particular section delineates crimes against the revenue and property of the State by officers thereof. It reads, in pertinent part:

"Every public officer of the State or any county, city, town, . . . and every deputy or clerk of any such officer and every other person receiving any money or other thing of value on behalf of or for account of this State or any department of the government of this State or any bureau or fund created by law and in which this State or the people thereof, are directly or indirectly interested, who either:

\*     \*     \*     \*     \*     \*

"Third: Knowingly keeps any false account, or makes any false entry or erasure in any account of or relating to any moneys so received by him, on behalf of the State, city, town, district or county, or the people thereof, or in which they are interested; . . .

\*   \*   \*   \*   \*   \*

".  .  .  shall upon conviction thereof, be deemed guilty of a felony . . .."

In the information, the State fails to allege receipt by defendant of the monies in question. It does, however, show his connection with and access to the money which was shown to have been received by the department via the location of the safe in his office and his counting of the money. While the information may be awkwardly drawn, it does meet the requirements set forth in 22 O.S.1971, § 409. It sufficiently apprises the defendant of the charge against him, and also states the offense charged with such certainty that a conviction or acquittal could be used as a bar to further prosecution for the same offense. See, *Fish v. State,* Okl.Cr., 505 P.2d 490 (1973).

■ Defendant finds fault with the State's evidence at trial on the same basis, that is, that the State failed to prove that defendant had made false entries to an account relating to monies *received by him.* We believe that the State has introduced sufficient circumstantial evidence to show that the monies were received by defendant. He was the office manager of the Utilities Service Division. He had responsibility for the cashiers and clerical employees. He was the one charged with counting and balancing the monies before they were forwarded to the City Treasurer, whether he performed this function himself or directed another person to do so. The office safe in which the monies were stored was either in his office or adjacent thereto and he had access to that safe.

The offense of making false entries by its nature is a difficult crime to prove. It is one committed in secret, without witnesses. To require the prosecution to prove directly and beyond a doubt defendant's actual receipt of the $100.00 draft of J. N. Warren, would be an intolerable burden, one virtually impossible to sustain in instances such as this one. Here, there is a clear showing that the check was in fact received by the department, and that as office manager and supervisor, and as the individual responsible for the transfer of the monies to the Treasurer's office, defendant also had received monies. We hold that the circumstantial evidence of defendant's receipt of the money was sufficient to withstand the demurrer to the evidence, and sufficient to send the case to the jury.

■ Defendant's third assignment of error is that the evidence of "other crimes" was prejudicial and should not have been admitted. During the trial the testimony of a number of witnesses and exhibits supporting their testimony were introduced by the State. These witnesses were customers of the Utilities Service Division who had paid their bills and had then received subsequent credits to their accounts of the same amount. In three instances, that surrounding the payment of Jacqueline Edwards, Mr. Linkswiler and Mr. Owens, the circumstances were not the same as those alleged by the State to be the common plan. Even so, given the admonition by the trial judge and the fact that sufficient evidence of common plan and scheme as shown by the other exhibits and testimony, the admission of the testimony of these three individuals is not a prejudicial error.

We believe that *McCluskey v. State,* Okl.Cr., 372 P.2d 623 (1962) is controlling in this case. In *McCluskey,* the defendant was charged with forgery, an offense which is related to the offense of which defendant in the instant case was convicted. We held:

"  .  .  .  We need but call attention to the rule that evidence of separate and similar offenses is admissible when it is material and proper to show (1) Motive, (2) Intent, (3) Absence of mistake or accident, (4) Identity of the person charged with the commission of the crime for which an accused is put on trial, and (5) Common scheme or plan embracing the commission of two or

more crimes so related to each other that proof of one tends to establish the other. An examination of the other transactions and exhibits introduced to prove them clearly reveals that the defendant was linked with all of them by either his signature, the evidence of passage, by endorsements as approving officer, or as one certifying and checking the material involved. This makes each of them related to each other and to the crime charged. They tend to establish a systematic scheme and were proper for the jury to consider in connection with the charge contained in the information. . . ." (at page 631)

In this case, as in *McCluskey*, a lengthy admonition was given to the jury that the evidence introduced was to be considered only as the jury in its discretion found that it related to the crime upon which defendant was charged. The jury was further admonished that the evidence was admitted for the purpose to show scheme, motive, intent and conduct on the part of the defendant. The jury was also admonished that the defendant was not charged with any offense growing out of the testimony of these witnesses.

▪ In view of our holding in *Mc-Cluskey*, supra, in view of the admonition given by the court, and because of the nature of this crime, we hold that the evidence tending to show other crimes was admissible, and, accordingly defendant's third assignment of error is without merit.

▪ Finally, the defendant urges that the trial court erred in overruling his motion in limine and in admitting the evidence of other crimes because a prior judicial determination of the issue collaterally estopped admission of the evidence. This contention is without merit. Defendant's reliance on *Hawk v. Mills*, Okl.Cr., 476 P. 2d 86 (1970), is misplaced. In that case there had been a previous determination by a jury of the ultimate fact of guilt or innocence. As this Court pointed out in *Hawk*, when an issue of ultimate fact has been determined by a valid and final judgment, that issue cannot be litigated again. There

has been no final determination of ultimate fact regarding this evidence, and the overruling of the motion in limine was not error.

Accordingly, for the reasons above stated, the conviction and sentence are *affirmed*.

BRETT, P. J., dissents.

BUSSEY, J., concurs.

BUSSEY, Judge (concurring):

I am in complete accord with Judge Bliss' interpretation of the statute which, in substance, holds that it was not the legislative intent to require the State to prove by direct evidence that a defendant, charged under the provisions of the statute heretofore recited, be actually physically present and receive the money either in person or constructively, but that circumstantial evidence establishing the defendant's guilt of the crime charged is sufficient. To hold otherwise and require the State to actually place the defendant at the scene by direct evidence would thwart the legislative intent and invite a public officer, responsible for the supervision of a large number of employees who are acting under his direction and receiving public money, to employ the precise plan here followed.

A public officer without a staff could certainly be convicted on circumstantial evidence without the necessity of the State proving by direct evidence his physical presence when the money was received or forwarded to the city. Even a public officer with a small staff could be convicted under the evidence here presented. I do not believe that the statute was intended to punish only public officers who operate without a staff, or with a very limited one, and who violate the provisions of the statute by making false entries on small sums of money received by them which can be proved circumstantially, and impose upon the State the duty to prove by direct evidence that the public officer with a large staff and who receives large sums of money, was present at the time the money was received or forwarded to the city. Such a

judicial construction would be not only absurd, but fundamentally unfair and discriminatory and frustrate and defeat the ends of justice.

Here, as in *McCluskey,* it was necessary to introduce evidence of other offenses in order to aid the jury in their determination. Considering the admonitions of the trial court and the concise instructions, together with the overwhelming evidence of the defendant's guilt, I fail to see how any fair-minded jury could arrive at any other verdict than the one rendered in the instant case.

BRETT, Presiding Judge (dissenting):

I dissent. In my view, two of defendant's assignments of error have merit and accordingly, this case should be reversed and remanded for new trial.

The portion of the statute under which defendant was convicted is set forth in the majority opinion. I would note that one of the elements is that the false entry be made *"relating to any moneys so received by him."* Of the five subsections of the statute, this is the only one making such requirement of receipt. We must presume this specific requirement is there as a material element of the offense, and not as mere surplusage. Among the many rules of statutory construction one is that every word, sentence or provision was intended for some useful purpose, and has some force and effect and that some effect must be given to each. *Ex Parte Higgs,* 97 Okl.Cr. 338, 263 P.2d 752 (1953). When all statutes regarding embezzlement and related crimes are examined,[1] this requirement of *receipt* stands out as forming a part of the particular crime defined by this section of 21 O.S.1971 § 341.

The State has failed to make a sufficient showing that defendant had receipt of the moneys of Mr. Warren. It was the uncontradicted testimony of the defendant that at the time of the Warren offense (the offense for which he was convicted) he was not yet responsible for the daily balancing of the receipts, although, if he were present, he might have actually done the balancing on that day. The State should be charged with placing the defendant *at work* where he could carry out his normal duties, on either March 19, 1973, the date J. N. Warren paid his utilities bill, or on March 20, 1973, the date the moneys were forwarded to the treasurer of the City of Oklahoma City. While it is not necessary for the State to show that the money was actually paid to defendant, in order to complete its chain of circumstantial evidence, it must put him at the office before it shows even constructive receipt. On that basis alone, I would reverse and remand with instructions that unless the State can place defendant at work at the time in question, the case should be dismissed.

Defendant's third assignment of error, that admission of the evidence of "other crimes" was error, also has merit. In the view of my colleagues, the admission of this evidence was not error under the rule enunciated in *McCluskey v. State,* Okl.Cr. 372 P.2d 623 (1962). Assuming, *arguendo,* that this is the type of evidence contemplated in McCluskey, it is still subject to a showing that these were, in fact, offenses prohibited by statute and that they were committed by defendant. In this regard, the evidence of "other crimes" suffers from the same flaw as the State's evidence on the instant charge; that is, the failure to place the defendant at work or on the premises on the dates the moneys were paid. Unless it could be established that defendant had an opportunity of at least constructive receipt of the funds allegedly manipulated by these entries, this evidence should have been excluded.

In addition, I find that the sheer volume of the evidence introduced here reaches a prejudicial level. Throughout the trial, some fifty exhibits were brandished about, and the record reflects continuing confu-

---

1. In 21 O.C.1971 § 341 et seq., embezzlement and related crimes against the State are treated; embezzlement and related crimes against an individual or private corporation or partnership are treated in 21 O.S.1971 § 1451 et seq.

sion on the part of the trial judge, the prosecutor, defense counsel, the clerk and the reporter. It is most unlikely that the confusion encountered by officers of the court in four and one half days of trial, when they had the exhibits in hand at the time, could be cured by the jury during deliberation. Rather, it is more likely that the mound of cancelled checks, cashier's stubs, receipts and journal entries piled before them caused the jury to believe that where so much "evidence" was present, some crime must have been committed by defendant.

These requirements on the State that it place defendant at the scene in order to prove its case and to introduce the evidence of other crimes may be seen by some as mere technicalities. However, in my view it is not the function of the Court to waive portions of statutes passed by our legislature.

Accordingly, I would reverse and remand this conviction for a new trial with instructions that the State be required to show defendant's presence at work on either March 19 or 20, 1973, or in the absence of that proof that the charge be dismissed. The same requirement of presence should be required before the evidence of "other crimes" could be admitted.